96 P.3d 420 (2004)
Robert ROBERSON and Connie Roberson, husband and wife, Robert Roberson as Guardian ad Litem for his minor child, Rebekah Roberson, Donna Rodriguez, a single person, Donna Rodriguez as Guardian ad Litem for her minor child, Kimberly Allbee, Jonathan Sims and Honnah Sims, husband and wife, and Jonathan Sims as Guardian ad Litem for his minor child, Daniel Sims, Respondents,
v.
Robert PEREZ, Kenneth Badgley, City of Wenatchee, a municipality in the State of Washington, Appellants,
Timothy Abbey, Laurie Alexander, Connie Saracino, Dean Reiman, Kate Carrow, State of Washington by and through its political subdivision Department of Social and Health Services, Cindy Andrews, Robin Wagg, Dave Helvey and Dan Laroche, Douglas County, a corporate body within the State of Washington, Defendants.
No. 21777-9-III.
Court of Appeals of Washington, Division 3, Panel Nine.
August 3, 2004.
*422 Robert L. Christie, Johnson, Christie, Andrews & Skinner PS, Seattle, WA, Patrick G. McMahon, Attorney at Law, Wenatchee, WA, for Appellant.
Robert Craig Van Siclen, Tyler K. Firkins, Van Siclen, Stocks & Firkins, Auburn, WA, James Morton Beecher, Attorney at Law, Seattle, WA, for Respondent.
KURTZ, J.
The plaintiffs here are individuals who were accused of child sexual abuse in Chelan County. After dismissal of the criminal charges against them, they instituted this civil action for damages against the City of Wenatchee and additional defendants. Among other things, they claimed that the City had negligently investigated the allegations of sexual abuse. In two separate trials, juries returned verdicts in favor of the defendants as to all but Honnah and Jonathan *423 Sims.[1] Following the second trial, the plaintiffs successfully moved the superior court to vacate the verdicts and award sanctions for alleged discovery violations by the City. The court also vacated orders dismissing Detective Robert Perez and Wenatchee Police Chief Kenneth Badgley, on the ground substantial justice required it.
In this appeal, the City contends that the superior court's orders vacating the defense verdicts and ordering a new trial constituted an abuse of discretion; i.e., the City's position is that the discovery violations were not intentional and, in any event, did not prejudice the plaintiffs' case. Because the record amply supports the superior court's assessment of the violations and their impact, we affirm its orders.
Detective Perez and Chief Badgley appeal the superior court's order vacating their dismissals. They argue, among other things, that they are not responsible for the City's discovery violations. We also affirm this order.
The plaintiffs' lawsuit grew out of the conduct of Detective Perez of the Wenatchee Police Department in his investigations of several individuals, including Donna Rodriguez and Robert and Connie Roberson. Detective Perez sought and obtained arrest warrants from Chelan County charging them, and others, with multiple counts of child sexual abuse. Many of the individuals were tried and convicted of the charged offenses before it came to light that Detective Perez had used interview techniques that undermined the reliability of the responses of the children who were the alleged victims of the abuse. The Court of Appeals overturned several convictions and remanded the cases for new trials. Ultimately, all charges and convictions involving those persons accused in what became known as the "Wenatchee sex ring" were resolved in a manner favorable to the charged individuals.
In 1996, the Robersons, Ms. Rodriguez, and their minor children filed this lawsuit against the City of Wenatchee, Robert Perez, Wenatchee Police Chief Kenneth Badgley, and others. Their complaint alleged numerous causes of action, including actions under 42 U.S.C. § 1983 for violation of their civil rights, and negligent supervision and negligent investigation.
On October 17, 1997, the superior court, on the plaintiffs' motion to compel discovery, ordered that the City "shall deliver to this court ... all internal affairs records and identifying information specified in [certain] discovery requests [and][a]ll ... personnel records and files pertaining to defendant Perez." Clerk's Papers (CP) at 1443-44. The discovery requests referenced in the court's order are Interrogatory No. 3 and Request for Production No. 3, in which the plaintiffs asked for internal investigation information and records pertaining to police activities that resulted in arrests for child abuse and separation of children from their parents, and Request for Production No. 1, in which the plaintiffs asked for Detective Perez's complete personnel records. Following entry of the order, the City produced some of the documents.
Two jury trials followed, both resulting in defense verdicts. The first, in 1998, involved the plaintiffs' 42 U.S.C. § 1983 claim against the City and the other defendants. The second trial in 2001 involved the plaintiffs' negligent investigation claim against the defendants. It occurred after the first trial, following the Court of Appeals reversal of the superior court's dismissal of that claim. See Rodriguez v. Perez, 99 Wash.App. 439, 994 P.2d 874, review denied, 141 Wash.2d 1020, 10 P.3d 1073 (2000).
In the second trial, the jury found that the City of Wenatchee was negligent, but that its negligence was not the proximate cause of the damage to the plaintiffs. The court had instructed the jury that the prosecutor's decision to criminally charge the plaintiffs was a superseding intervening cause cutting off liability by the defendants for negligent investigation only if the defendants had gathered and presented to the prosecutor all material *424 information, and reasonable minds could not disagree as to that fact.
On October 14, 2002, the plaintiffs moved to vacate the 2001 defense verdict. Counsel for plaintiffs alleged that he had learned that the City had not fully complied with plaintiffs' discovery request for Detective Perez's complete personnel file and any documents pertaining to an internal affairs investigation of police activities relating to the Wenatchee sex ring. Counsel stated he became aware of the additional documents only after the City, as the defendant in another civil action pending in federal court that involved the sexual abuse investigation, turned over the complete personnel file and the investigatory file to the plaintiffs in that suit. Those files contained many documents the City had not provided the plaintiffs during discovery in their action against the City. The plaintiffs alleged that "[n]early all of the withheld documents contained explosive evidence material to the plaintiffs' claims in this Court." CP at 1410.
In support of this motion to vacate, plaintiffs' attorney Robert Van Siclen filed a declaration in which he stated that "[i]n conversations I personally had with Mr. McMahon [the City's attorney], it was very clear that he understood that we were requesting specifically all information pertaining to a disability claim that we understood by the end of 1997 that Detective Perez was pursuing through the Wenatchee Police Department. We also very clearly requested any internal documents relevant to an investigation of [Detective] Perez." CP at 1451 (emphasis added). Mr. Van Siclen then described examples of documents that the City had not disclosed, many of which related to Detective Perez's Labor and Industries claim.[2] Mr. Van Siclen concluded, as follows: "The [undisclosed] evidence would have been critical to the plaintiffs' case, and would have demonstrated the nexus between the defendants' actions and the incarceration of the plaintiffs. Also, I would not have agreed to enter an order dismissing Perez if this information was available, and further would have called Perez as a witness in our case that was tried in 2001." CP at 1454.
Patrick McMahon, counsel for the City, filed a declaration on November 4, 2002, opposing the plaintiffs' motion to vacate. He stated he did not know that the City had files different than the file it provided in response to the plaintiffs' discovery request. Sandra Smeller, the City's Director of Human Resources, also filed a declaration in which she stated the City maintains three separate files for each employee: A personnel file that contains information such as performance evaluations and benefits; a medical file that contains doctor notes, work-related injuries, and leave requests; and a Department of Labor and Industries file that contains records of on-the-job injuries. The personnel file was the only file produced in response to their discovery request. Ms. Smeller indicated that she did not inform the City's attorney, Mr. McMahon, that there was a medical file and a Department of Labor and Industries file in addition to the personnel file.
Mr. McMahon argued that in the federal trial, the plaintiffs requested Detective Perez's medical records. He characterized this request as "more specific than the request in [this case] for simply the personnel file of Mr. Perez." CP at 1575. Mr. McMahon also identified other pertinent information provided to the plaintiffs and he argued that this information substituted for the information that was not included in the City's responses to the plaintiffs' discovery requests. Finally, Mr. McMahon denied Mr. Van Siclen's assertion that he understood that the scope of the plaintiffs' request included documents relating to Detective Perez's disability claim and documents relating to any internal department investigation of Detective Perez. Only after the plaintiffs made specific requests following their review of the material discovered in the federal casedid Mr. McMahon learn that the City had three separate files on Detective Perez.
On November 14, 2002, Tyler Firkins, another of the plaintiffs' attorneys, filed a declaration responding to Mr. McMahon's declaration. *425 In their brief on appeal, the plaintiffs cite the documents attached to Mr. Firkins' declaration as ones that the City withheld that were relevant to the plaintiffs' case. They include multiple documents relating to Detective Perez's medical condition.
At the October 31, 2002 hearing on plaintiffs' motion to vacate, the court found that the City had intentionally withheld material evidence. The court in its oral opinion stated that "in this case there is material, very important material ... that was not given to the plaintiffs upon their request that would have been very important in preparation of the case. They were blindsided, and they were, I believe, misled, and I believe the court was misled." Report of Proceedings (RP) (Oct. 31, 2002) at 39-40.
On January 6, 2003, the superior court entered an order that set aside the verdicts in the 2001 trial. It specifically found that the City of Wenatchee had "intentionally failed to produce to Plaintiffs material records and files that had been legitimately requested in discovery requests, including without limitation thereto, all of Detective Perez's personnel records and files and the investigative files pertaining to Detective Perez." CP at 2464 (emphasis added). Further, the court found that "the withheld documents were material to the Plaintiffs' fair presentation of their case at the time of trial." CP at 2464 (emphasis added). Finally, the court held that the City's actions "mislead [sic] the Plaintiffs as well as this Court when it represented that it had produced all of Officer Perez's personnel records and files and any and all internal investigative files." CP at 2464 (emphasis added). The order also set aside the July 9, 2001 "Orders of Dismissal regarding Defendants Perez and Badgley." CP at 2464. The court assessed the City $606,761 in sanctions.
On December 9, 2002, the plaintiffs filed an additional motion to vacate the 1998 King County verdict in which the jury returned verdicts in favor of the defendants.[3] In argument on that motion on January 8, 2003, plaintiffs' counsel represented "there is nothing new in this motion ... that was not in the 2001 set-aside except for the fact that in the subsequent period of time we learned of the preemployment investigative files [relating to Detective Perez]." RP (Jan. 8, 2003) at 10.
On January 9, 2003, the court set aside the 1998 verdicts on the same grounds as its earlier order of January 6, 2003, that set aside the verdicts in the 2001 trial. The court assessed sanctions against the City in the amount of $112,203.24.
The City now appeals from these orders setting aside the juries' verdicts and setting aside the orders dismissing Detective Perez and Chief Badgley.
The first issue on appeal is whether the superior court properly granted the plaintiffs' motions to vacate the defense verdicts in favor of the City of Wenatchee and ordered a new trial. In addressing this issue, we consider the following questions: Did the plaintiffs comply with CR 60's procedural requisites for vacation of judgment? Did the plaintiffs establish a discovery violation? And, even if a violation occurred, was the proper remedy the vacation of the two defense jury verdicts and a new trial?
CR 60 Procedural Requisites. The City contends that the superior court should not have decided the plaintiffs' motions to vacate without show cause hearings at which testimony was offered on the issues of fact presented by the parties' declarations. We disagree.
CR 60(e) sets forth the procedure for vacating judgments. It provides that the party seeking such relief must file a motion with supporting affidavit. CR 60(e)(1). A show cause hearing on the motion does not require live testimony; rather, "oral testimony is not the general rule and is discretionary." In re Marriage of Irwin, 64 Wash.App. 38, 61, 822 P.2d 797 (1992); see also Stoulil v. Edwin A. Epstein, Jr., Operating Co., 101 Wash.App. 294, 298, 3 P.3d 764 (2000). In any event, the court in Irwin was able to distinguish In re Marriage of Maddix, 41 Wash.App. 248, *426 703 P.2d 1062 (1985) on a ground that applies here, as well. The court stated as follows: "[I]f there was error [in not hearing oral testimony], it was harmless. The trial judge below was the same judge who heard the entire ... case. He was well versed in the... circumstances. He did not need oral testimony to help him judge credibility." Irwin, 64 Wash.App. at 62, 822 P.2d 797.
We hold that CR 60 did not require the superior court to hold a hearing at which oral testimony was offered.
Discovery Violation. The City contends that the superior court's findings do not support its conclusion that a discovery violation occurred. The City emphasizes that the plaintiffs never asked for Detective Perez's medical file or his Labor and Industries file, even though the personnel file contained references to material in these files.
The City's argument is without merit. The plaintiffs' discovery requests and the order compelling discovery were not simply for Detective Perez's "personnel file." The superior court ordered that the City "shall deliver to this court ... all internal affairs records and identifying information specified in [certain] discovery requests [and][a]ll ... personnel records and files pertaining to defendant Perez." CP at 1443-44. The discovery requests referenced in the court's order are Interrogatory No. 3 and Request for Production No. 3, in which the plaintiffs asked for internal investigation information and records pertaining to police activities that resulted in arrests for child abuse and separation of children from their parents, and Request for Production No. 1, in which the plaintiffs asked for Detective Perez's complete personnel records. Therefore, the City's failure to turn over internal affairs investigations of Detective Perez, and medical and Department of Labor and Industries documents kept separate for confidentiality purposes, constituted a discovery violation.
The superior court properly found that the City violated its discovery order.
Remedy. The City contends that the superior court abused its discretion when it ordered a new trial as a remedy for violation of the discovery order. The City notes that the plaintiffs could have found the withheld evidence before trial if they had exercised due diligence. Also, the City argues the circumstances here do not establish either a willful violation or a violation that affected the verdict. And, finally, the City argues that the court did not consider lesser sanctions.
CR 37(b)(2) provides that the superior court "may make such orders in regard to the failure [to comply with discovery orders] as are just." CR 60(b)(4) provides that the superior court may relieve a party from a final judgment for "misconduct of an adverse party."
The superior court vacated the 1998 and 2001 jury verdicts and ordered a new trial as a sanction for the discovery violations. In reviewing the propriety of the sanction for such violations, we apply the abuse of discretion standard. Rivers v. Wash. State Conference of Mason Contractors, 145 Wash.2d 674, 684-85, 41 P.3d 1175 (2002). We give wide latitude to the trial court in fashioning an appropriate sanction for discovery abuse. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993) (quoting Cooper v. Viking Ventures, 53 Wash.App. 739, 742-43, 770 P.2d 659 (1989)).
Abuse of discretion is also the standard for review of a superior court's decision to grant a new trial. Taylor v. Cessna Aircraft Co., 39 Wash.App. 828, 831, 696 P.2d 28 (1985). When a court grants a new trial on the ground that substantial justice has not been done, "`the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record.'" Olpinski v. Clement, 73 Wash.2d 944, 951, 442 P.2d 260 (1968) (quoting Baxter v. Greyhound Corp. 65 Wash.2d 421, 440, 397 P.2d 857 (1964)). Under the abuse of discretion standard, we will not disturb the superior court's determination except upon a clear showing that the determination was "manifestly unreasonable" or was based upon "untenable grounds" or made for "untenable reasons." Rivers, 145 Wash.2d at 684, 41 P.3d 1175 (quoting Burnet *427 v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997)).
Our Supreme Court has held that to support imposition of one of the greater sanctions, the disobedient party's discovery violation must be "willful or deliberate and [one that] substantially prejudiced the opponent's ability to prepare for trial." Burnet, 131 Wash.2d at 494, 933 P.2d 1036 (emphasis added); see also Carlson v. Lake Chelan Cmty. Hosp., 116 Wash.App. 718, 737, 66 P.3d 1080, review granted, 150 Wash.2d 1017, 81 P.3d 119 (2003). A trial court's finding of fact that the party willfully failed to comply with a discovery order is reviewed for "clear error." In re Golant, 239 F.3d 931, 936 (7th Cir.2001).
DUE DILIGENCE. First, the City contends that the plaintiffs did not exercise due diligence. Indeed, the City points out that the plaintiffs knew by the end of 1997 that Detective Perez had filed a disability claim, yet they did not inquire as to why the personnel file produced by the City did not contain information pertaining to that claim. The personnel file that it turned over to the plaintiffs referenced that disability claim. And, the City contends the plaintiffs were aware of the disability claim from other sources of evidence in the undisclosed files. The plaintiffs counter they should not be faulted for lack of diligence if the City's attorney was also unaware of the additional files.
Diligence is not a consideration in determining whether a new trial is an appropriate remedy for a discovery violation. And, even in newly discovered evidence cases, where diligence is a factor, one court has observed that "[w]here a party has resorted to pretrial discovery procedures and the opposing party fails to comply in good faith therewith, such procedure constitutes the exercise of appropriate diligence." Drehle v. Fleming, 129 Ill.App.2d 166, 173, 263 N.E.2d 348 (1970), aff'd, 49 Ill.2d 293, 274 N.E.2d 53 (1971).
Here, the plaintiffs exercised diligence when they sought the information by means of discovery requests, and they were justified in believing the City had fully and completely answered those requests.
WILLFUL VIOLATION. The City further contends that the record does not support a finding that the City willfully violated the court's discovery order, or that the alleged violation was substantial. Specifically, the City argues there was no showing that the alleged violation affected the plaintiffs' case. The City also disputes the information's relevancy to the plaintiffs' claim of negligent investigation, and whether the plaintiffs could have used the information at trial. The City points out that the superior court granted the City's motion in limine and excluded evidence of medical records, psychological testing and/or treatment, and Labor and Industries records. Because the jury found that the City's negligence was not the proximate cause of the plaintiffs' damages, the City argues that additional information regarding Detective Perez's medical problems would not have changed the jury's verdict.
The plaintiffs counter that the withheld evidence raised additional questions about Detective Perez's credibility, which, in turn, may have affected the jury's determination that the City's negligence was not the cause of the plaintiffs' damages. For instance, the plaintiffs ask: Did Detective Perez turn over all the evidence to the prosecutor, as claimed, and, if he did not, would the City have succeeded in claiming that any negligence in investigation was superseded by the acts of the prosecutor, who had immunity?
Here, the superior court found that the City acted intentionally when it did not turn over all of the personnel and investigative documents it had on file relating to Detective Perez. That finding is supported by the description of the documents in the court's order for compliance, which mirrored the description of the documents in the discovery requests. Those descriptions clearly identified the subject documents as "all internal affairs records and identifying information... [and][all] ... personnel records and files pertaining to defendant Perez." CP at 1443-44. The fact that the City kept separate files on employees in order to segregate confidential material does not relieve the City of its discovery obligations. The court ordered that the City produce all internal investigation material and Detective Perez's *428 complete personnel file because it was integral to the plaintiffs' case preparation and plainly asked for in the discovery requests. It is clear from the context that the term "intentionally,"[4] as used by the court, encompasses "willfully." That is, the City knew what was being requested but decided not to comply with the discovery request.[5]
PREJUDICE. Burnet also requires that the discovery violation be one that "substantially prejudiced the opponent's ability to prepare for trial." Burnet, 131 Wash.2d at 494, 933 P.2d 1036. The word "substantial" is key, and its meaning is best illustrated by contrasting it with the standard for a new trial based upon newly discovered evidence. In the latter situation, the moving party must show that the new evidence is material; i.e., it will probably change the result of the trial. Go2Net, Inc. v. C I Host, Inc., 115 Wash.App. 73, 88, 60 P.3d 1245 (2003) (quoting Holaday v. Merceri, 49 Wash.App. 321, 329, 742 P.2d 127 (1987)).
In contrast, "[a] new trial based upon the prevailing party's misconduct does not require a showing the new evidence would have materially affected the outcome of the first trial." Taylor, 39 Wash.App. at 836, 696 P.2d 28 (emphasis added) (citing CR 60(b)(4)). In Taylor, the court quoted from a case interpreting the identical federal rule:
"[I]t cannot be stated with certainty that all of this would have changed the result of the case. But, ... a litigant who has engaged in misconduct is not entitled to `the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent.'"
Id. at 836-37, 696 P.2d 28 (quoting Seaboldt v. Penn. R.R., 290 F.2d 296, 300 (3d Cir. 1961)).
We conclude that the discovery violation here is "substantial." The court found that the withheld files were "material to the Plaintiffs' fair presentation of their case at the time of trial." CP at 2464. In so holding, we acknowledge that the court in the 1998 and 2001 trials had entered an order in limine that barred evidence of Detective Perez's disability claim and medical conditions. Nevertheless, "[t]he standard of relevance for purposes of discovery is much broader than the standard required under the evidence rules for admissibility at trial." Barfield v. City of Seattle, 100 Wash.2d 878, 886, 676 P.2d 438 (1984) (citing 4 J. Moore & J. Lucas, Federal Practice ¶ 26.56[4], at 26-170 (2d ed.1983)). Moreover, "[t]he fact that the evidence sought `would otherwise be inadmissible at trial is not an impediment to discovery', 4 L. Orland, Wash. Prac., Rules Practice § 5305, at 22 (3d. ed.1983), so long as `the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" Barfield, 100 Wash.2d at 886, 676 P.2d 438.
LESSER SANCTIONS. The City contends that the court's remedy for the alleged violationsvacation of the two jury verdicts and a new trialwas too severe and that the record does not demonstrate that the court considered lesser sanctions.
The purposes of sanctions are to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the wrong. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 356, 858 P.2d 1054 (1993). The court should impose the least severe sanction that will adequately serve these purposes. Id. at 355-56, 858 P.2d 1054. The "reasons [for the choice of sanctions] should, typically, be clearly stated on the record so that meaningful review can be had on appeal.... ['I]t must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed.'" Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997) (quoting Snedigar v. Hodderson, 53 Wash.App. 476, 487, 768 P.2d 1 (1989), aff'd, 114 Wash.2d 153, 786 P.2d 781 (1990)). In Snedigar, the *429 court stated that, in imposing CR 37(b)(2) sanctions, the federal courts generally have held that "when the most severe sanction of default or dismissal is imposed, the trial court should explicitly consider whether lesser sanctions would probably cure the improper behavior and advance the deterrent aspects of CR 37." Snedigar, 53 Wash.App. at 487, 768 P.2d 1. And, these reasons must be clearly stated on the record so that meaningful review may be had on appeal. Id.
Here, it is readily apparent that a lesser sanction would not cure the improper behavior. The fact the City had not fully complied with the plaintiffs' discovery requests did not come to light until after judgment. At that point, no sanction other than a new trial was available. In these circumstances, Snedigar's direction that the trial court must consider lesser sanctions on the record is not applicable.
The superior court did not abuse its discretion in ordering a new trial. The circumstances here are such that a reasonable person could conclude that a new trial was the appropriate sanction for the City's willful failure to comply with the discovery order, which failure resulted in substantial prejudice to the plaintiffs in preparing their case. There was no error.
The second issue in this appeal concerns the superior court's decision to vacate its earlier dismissals of the individual defendants, Robert Perez and Kenneth Badgley. In addressing this issue, we consider the following questions: What is the effect of the plaintiffs' failure to personally serve the motion to vacate on these two defendants? Did the plaintiffs' two prior dismissals of Detective Perez and Chief Badgley operate as an adjudication on the merits? And, did the superior court properly vacate the prior dismissals when the grounds for vacation concerned alleged discovery violations by the City, but not by these two men personally?
Failure to Personally Serve the Motion. CR 60(e)(3) provides that "[t]he motion, affidavit, and the order to show cause shall be served upon all parties affected in the same manner as in the case of summons in a civil action." Detective Perez and Chief Badgley assert that personal service is required by CR 60(e)(3). The plaintiffs contend that service on Detective Perez's and Chief Badgley's attorney, who was the same as the City's attorney, was sufficient.
In Lindgren v. Lindgren, 58 Wash.App. 588, 593-94, 794 P.2d 526 (1990), the court held that the service requirement of CR 60(e) is not jurisdictional. It reasoned that a motion to vacate is part of the original suit and does not require independent jurisdictional grounds. While the party in Lindgren had not complied with the procedure for service set out in CR 60(e), the court held the deviation was inconsequential because the opposing party had a meaningful opportunity to be heard and adequate time to prepare. Lindgren, 58 Wash.App. at 594, 794 P.2d 526. Specifically, a copy of the motion had been received by the attorney for the adverse party, that attorney had recently filed papers in the action on behalf of the adverse party, and the party appeared and defended the motion to vacate. Id. at 593, 794 P.2d 526.
The facts here are similar to those in Lindgren. The plaintiffs served the attorney who had represented Detective Perez and Chief Badgley until they were dismissed from the lawsuit just a short time before the beginning of the second trial in 2001. Counsel appeared at the hearing in 2002 and argued on behalf of Detective Perez and Chief Badgley against the vacation of the 2001 dismissals. In these circumstances, the deviation from CR 60(e)'s requirements was inconsequential.
There was no reversible error.
Prior Dismissals. CR 41(a)(1) provides that
any action shall be dismissed by the court:
....
(B) ... Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case.
CR 41(a)(4) states:
Unless otherwise stated in the order of dismissal, the dismissal is without prejudice, except that an order of dismissal operates as an adjudication upon the merits when obtained by a plaintiff who has once dismissed an action based on or including *430 the same claim in any court of the United States or of any state.
Here, the plaintiffs originally commenced this lawsuit against the defendants in Thurston County. On August 5, 1996, they obtained an order dismissing the lawsuit without prejudice pursuant to CR 41(a)(1)(B). On August 9, 1996, plaintiffs Rodriguez recommenced their action in Chelan County; on that same day, plaintiffs Roberson recommenced their lawsuit in Douglas County. The lawsuits were consolidated and moved to King County on a change of venue order. The first trial took place in King County. The second trial took place in Spokane County on a second change of venue order. Shortly before the commencement of the 2001 trial in Spokane County, the plaintiffs moved for and obtained an order under CR 41(a)(1)(B), dismissing from their suit without prejudice Detective Perez and his wife, and Police Chief Badgley and his wife.
Detective Perez and Chief Badgley believe that because they had been previously dismissed in 1996 in Thurston County when the plaintiffs decided to re-file their actions in Chelan and Douglas Counties, the second dismissal, which took place in 2001 shortly before the second trial, operated as an adjudication on the merits as to them. See CR 41(a)(4). The plaintiffs counter that CR 60 does not limit the court in vacating an order of dismissal if justice so requires. Detective Perez and Chief Badgley reply that the plaintiffs have offered no authority for their argument that CR 60 prevails over CR 41, as to the effect of a second dismissal.
Recently, this court in Spokane County v. Specialty Auto and Truck Painting, Inc., 119 Wash.App. 391, 79 P.3d 448 (2003), review granted, 151 Wash.2d 1009, 88 P.3d 964 (2004), held that the superior court erred when it refused to dismiss the plaintiff's third suit. The court stated that the language of CR 41(a)(4) was mandatory and did not permit judicial discretion, even when application "would not further the purpose of the rule to prevent harassment of civil defendants." Specialty Auto, 119 Wash.App. at 393, 79 P.3d 448.
Nevertheless, CR 60 does not limit the type of order that can be vacated. The superior court may grant a new trial where substantial justice has not been done. Olpinski v. Clement, 73 Wash.2d 944, 951, 442 P.2d 260 (1968). We agree with the plaintiffs that this issue must be analyzed as a CR 60 motion to vacate the second dismissal of the two individual defendants. We further consider whether the superior court erred when it vacated the dismissals of Detective Perez and Chief Badgley, even though they were not involved in the discovery violations.
Grounds for Vacation. The City, not Detective Perez or Chief Badgley, committed the discovery violations. The plaintiffs' discovery requests that are the subject of the sanction were clearly addressed to the City of Wenatchee alone. In deciding to vacate the second dismissals of Detective Perez and Chief Badgley, the superior court simply stated that "[t]hey are not being sanctioned for the discovery violation, but the discovery violation impacts the plaintiffs' right to a fair trial against these individuals, so I am granting the new trial against them as well." RP (Jan. 6, 2003) at 55.
The trial court has the power to grant a new trial where substantial justice has not prevailed. Olpinski, 73 Wash.2d at 950-51, 442 P.2d 260. The superior court determines, in the exercise of its discretion, whether substantial justice requires it to vacate a prior decision and order a new trial. That determination must be based upon "`weighing of factors and values such as the complexity of the issues, the length of the trial, the degree and nature of the prejudicial incidents, the nature and amount of the verdict, the cost of retrial, the probable results, the desirability of concluding litigation, and such other circumstances as may be apropos to the particular situation.'" Olpinski, 73 Wash.2d at 951, 442 P.2d 260 (quoting Baxter v. Greyhound Corp., 65 Wash.2d 421, 440, 397 P.2d 857 (1964)).
Here, the court concluded that the dismissals of Detective Perez and Chief Badgley had to be vacated to achieve substantial justice. We defer to the court's assessment, which is supported by a balancing of the Olpinski factors.
*431 In summary, service of the motion was sufficient to notify Detective Perez and Chief Badgley and give them opportunity to resist, which their counsel did on their behalf. Furthermore, the superior court properly exercised its discretion to vacate their dismissals and ordered a new trial in order to achieve substantial justice for the parties.
The third issue on appeal is whether the superior court abused its discretion when it awarded the plaintiffs monetary sanctions against the City of Wenatchee. In addressing this issue, we consider the following questions: Did the court err when it imposed attorney fees and expenses as a sanction for the discovery violations, as to the 2001 trial, without first apportioning the fees and expenses among the number of claims and the number of defendants? And, did the court's award of attorney fees and expenses as a sanction for the discovery violations, as to both the 1998 and the 2001 trials, fail for lack of reasonableness?
Apportionment of Fees and Costs. At the hearing on plaintiffs' motion for monetary sanctions, the superior court ordered the City to compensate the plaintiffs $606,761 for the effect of the City's discovery violation in the 2001 trial. At the time, the City questioned the court's failure to apportion the fees and costs. In response, the court stated: "I have no problem with that.... They will be required again, and so we are basically doubling up if we do not award the full costs of those witnesses." RP (Jan. 6, 2003) at 45. The City's attorney countered, "[T]hey would have been called in any event regardless of any discovery violations because Douglas County would have been a defendant in any event." RP (Jan. 6, 2003) at 45. The court responded, "And will have to be called again because of the necessity for a new trial." RP (Jan. 6, 2003) at 45. The City also questioned the reasonableness of the $250 hourly rate.
CR 37(b)(2) provides:
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the [discovery] order ... to pay the reasonable expenses, including attorney fees, caused by the failure [to comply with the discovery order]....
(Emphasis added.)
In Washington State Physicians Insurance Exchange and Association v. Fisons Corporation, 122 Wash.2d 299, 339, 858 P.2d 1054 (1993), the court discussed the standard of review of monetary sanctions imposed under CR 11 and CR 26(g) (attorney certification of answers to discovery requests). While the case before us involves the imposition of sanctions under CR 37, Fisons provides analogous authority for our review of the monetary sanctions imposed here.
As with the imposition of other sanctions for discovery abuse, monetary sanctions are reviewed for abuse of discretion, giving wide latitude to the trial judge to determine what sanctions are appropriate in a given case. Fisons, 122 Wash.2d at 339, 355, 858 P.2d 1054. In making that determination, certain considerations guide the trial court. Id. at 355, 858 P.2d 1054. Those considerations include that
[t]he purposes of sanctions orders are to deter, to punish, to compensate and to educate. Where compensation to litigants is appropriate, then sanctions should include a compensation award.... [S]anctions need to be severe enough to deter these attorneys and others from participating in this kind of conduct in the future.
Id. at 356, 858 P.2d 1054 (footnote omitted).
The defendants in the 2001 trial on the plaintiffs' negligent investigation claim were the City of Wenatchee and Douglas County. The original action, tried in 1998, included additional individual defendants and the Department of Social and Health Services. The plaintiffs' argument and the superior court's oral ruling indicate that the new trial will concern the same issues and witnesses as the 2001 trial. Although Douglas County may not be a party on retrial, its role in the investigation and in decisions will be at issue if the City continues to allocate responsibility to the County. And, the superior court stated in its oral ruling: "it would seem to me that the plaintiffs are going to be required to do the same things that were done before in presenting this matter again at trial." RP (Jan. 6, 2003) at 43.
*432 We conclude the court did not abuse its discretion by refusing to reduce the sanction against the City for the 2001 trial by apportioning part of the plaintiffs' fees and costs to Douglas County.
Reasonableness. The City contends that the court did not evaluate the reasonableness of the fees. Specifically, the City makes the following arguments:
(a) The superior court did not follow the Supreme Court's advice for application of the lodestar factors.
(b) In both cases, the court applied an hourly rate in excess of what the attorneys billed at the trials$250 per hour as opposed to $200 per hour. Fee awards should be based on the rate in effect at the time services are rendered. Fisher Prop., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 375, 798 P.2d 799 (1990).
(c) Some of the information was inherently flawedfor example, the City alleges the plaintiffs' attorneys billed 288 hours between July 9 and July 27, 2001. For July 5, 2001, 28 hours were billed. For April 27, 1998, 25.5 hours were billed.
(d) The plaintiffs' attorneys billed $250 per hour for their trips between Seattle and Spokane. No statutory authority exists for recovery of travel time.
(e) The court awarded expert witness fees and pretrial deposition costs, neither of which is statutorily authorized.
LODESTAR. "[C]ourts should be guided in calculating fee awards by the lodestar method." Mahler v. Szucs, 135 Wash.2d 398, 433, 957 P.2d 632 (1998). We do not find a Washington case that addresses whether the lodestar method applies when attorney fees are awarded as a monetary sanction for discovery abuse. However, the federal courts use the method in such cases. See, e.g., Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc., 212 F.R.D. 94, 103 (E.D.N.Y.2002); CoStar Group, Inc. v. LoopNet, Inc., 106 F.Supp.2d 780, 787 (D.Md.2000).
In Mahler, the court explained the lodestar methodology. First, the court determines whether the number of hours is reasonable. The court explains that wasteful and/or duplicative hours should be excluded, as well as hours pertaining to unsuccessful theories or claims. There must be appropriate documentation and the court must determine the reasonableness of the hourly rate. Mahler emphasizes that the trial court should use contemporaneous rates for hours actually billed rather than current rates or rates adjusted for inflation. At the end of this process, the lodestar fee is calculated by multiplying the hourly rate by the reasonable number of hours incurred, adjusted upward or downward in the discretion of the court. Mahler, 135 Wash.2d at 434, 957 P.2d 632.
Here, the plaintiffs produced detailed accounts of their professional time and their costs in both the 1998 and 2001 trials. The City alleges that the superior court accepted these accounts without evaluating them for reasonableness of hours expended or apportioning them as to claims and defendants. As for the latter argument, we have previously addressed it and concluded that the superior court considered apportionment and found that it would not change the number of hours or the costs to the plaintiffs on retrial of the 2001 action. As for reasonableness, the City has not demonstrated how the amounts are excessive for this litigation. Indeed, plaintiffs point out that the City's attorney in this litigation billed the City for similar amounts.
HOURLY RATE. The City also disputes the hourly rate of the plaintiffs' attorneys. It argues that the rate should be the same as the rate billed at the time of the original trials, and not the rate that the attorneys will charge on re-trial. We did not find a case that addresses the issue of hourly rate when the trial court has ordered a new trial as a sanction. As a practical matter, fees and costs for the new trial will be higher because it will take place over six years later with respect to the 1998 vacated verdict, and over three years later as to the 2001 verdict. And, it is the City's conduct that necessitates the new trial. In this situation, we hold the trial court did not err when it applied the new, $250 per hour rate to compute the sanction amount.
*433 FLAWED INFORMATION. The City, for the first time on appeal, disputes some of the items included in the plaintiffs' billing. In their response, the plaintiffs state that the City did not bring these items to the attention of the superior court and are, therefore, precluded from raising them for the first time on appeal. The plaintiffs do not directly answer the City's allegations.
The City's citations raise some questions about the accuracy of the plaintiffs' billing logs. As set forth above, an entry for July 5, 2001 shows three separate billings for DB for a total of 28 hours. Conceivably, DB's entry included time spent on the case by attorneys working under DB's direction. If that was so, then it would explain the 28 hours billed in a 24-hour period.
Under RAP 2.5(a), this court may refuse to review any claim of error which was not raised in the trial court. Given the fact the City's claims of error in this regard would require the taking of additional evidence to explain the reasons, if any, for the disputed entries, we decline to address them. The City's arguments should have been made during trial.
TRAVEL TIME. The City argues that the court should not have compensated the plaintiffs for their counsels' travel time. We did not find a Washington case addressing whether travel time may be included in an award of attorney fees, but cases from at least one jurisdiction allow it, depending upon the circumstances. See, e.g., Eve's Garden, Inc. v. Upshaw & Upshaw, Inc., 801 So.2d 976, 979 (Fla.Dist.Ct.App.2001). The court in Eve's Garden reasoned as follows:
Although travel time is generally not compensable... when setting a reasonable fee, we conclude that travel time may be awarded when fees are awarded as a sanction under circumstances similar to this case. The defendants were aware that the failure to provide discovery could result in unnecessary hearings, and that those hearings would require the plaintiffs' counsel to travel to Dade City.

(Emphasis added) (citations omitted); see also Brock v. Brock, 654 So.2d 163, 164 (Fla. Dist.Ct.App.1995), disapproved on other grounds, Rosen v. Rosen, 696 So.2d 697, 698 (Fl.1997).
We adopt the rationale of the Florida court and uphold the superior court's award here.
AUTHORIZED COSTS. The City challenges the superior court's sanction as including costs that are not authorized by statute. See Gerken v. Mut. of Enumclaw Ins. Co., 74 Wash.App. 220, 231, 872 P.2d 1108 (1994) (citing RCW 4.84.010). Again, we do not find a case that addresses whether a sanction for a discovery violation can include an award of costs that are not authorized by a statute defining costs which can be awarded to a prevailing party. But, again, because sanctions are punitive, we hold that no such limitation would apply to them.
In conclusion, we hold that the monetary sanctions awarded by the court were reasonable in amount and related to the issues affected by the City's discovery violations.
Affirmed.
WE CONCUR: KATO, C.J., and SWEENEY, J.
NOTES
[1] In a separate appeal, this court reversed the jury verdict in favor of the Sims. See Roberson v. Perez, 119 Wash.App. 928, 83 P.3d 1026 (2004).
[2] Since these documents and other cited in this opinion were filed under seal, the court will not set forth in detail their contents here.
[3] According to the City, this motion did not cite CR 60 as its basis, but we note that it is titled, "Plaintiffs' Motion to Vacate the Verdicts in Favor of Perez, Badgley and the City of Wenatchee with Respect to the Plaintiffs' 42 U.S.C. § 1983 Claims." CP at 2285.
[4] CP at 2464.
[5] Indeed, this court in Carlson, stated that "even an inadvertent error in failing to disclose an expert has been deemed willful as a `"willful" violation means a violation without a reasonable excuse.'" Carlson, 116 Wash.App. at 737, 66 P.3d 1080 (quoting In re Estate of Foster, 55 Wash.App. 545, 548, 779 P.2d 272 (1989)).