# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL ROUPP; ROUPP ENTERPRISES, INC.; ROUPP ENTERPRISES 401(K); and ROUPP ENTERPRISES DEFINED BENEFIT PLAN,<br><br>　　　　　Respondents,<br><br>　　　　　v.<br><br>LUCIUS GREGORY MEREDITH; EVAN JENSEN; KENNY ROWE; NAVNEET SUMAN; IAN BLOOM; ALEKSANDR BULKIN; EDWARD M. EYKHOLT; and RCHAIN COOPERATIVE,<br><br>　　　　　Appellants. | No. 82814-2-I<br>(consol. with nos. 82815-1-I, 82816-9-I, and 82817-7-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — RChain appeals from the denial of its CR 60(b) motion to vacate the denial of its motion to compel arbitration. We reverse and remand for the trial court to reconsider the motion to vacate.

## FACTS

RChain Cooperative is a Washington cooperative association established to develop a "blockchain"[1] platform for electronic transactions. Michael Roupp and his associated business entities became a member of RChain in August 2017.

---

[1] A "blockchain" is a "'digital database consisting of a continuously growing list of records, called blocks. These blocks of data are chained together using cryptography, making it difficult to rewrite the older records. Further, a blockchain and the data on it can be simultaneously used and shared within a large, decentralized publicly available network.' " A.J. Bosco, Blockchain and the Uniform Electronic Transaction Act, 74 BUS. LAW. 243, 243-44 (2018)).

Roupp bought RHOC, RChain's cryptocurrency tokens.[2]   In November 2019, Roupp sued RChain for violations of the Consumer Protection Act,[3] the Securities Act of Washington,[4] and tortious interference with business expectancy.  In August 2020, RChain moved to compel arbitration based on an arbitration provision in its "Membership Agreement."  RChain argued that under its bylaws all members were required to sign the Membership Agreement, and that this was legally sufficient to bind Roupp.  Roupp argued that RChain failed to demonstrate that he had seen and agreed to the Membership Agreement and its terms.  No copy of a signed agreement was produced.  The trial court denied the motion to compel arbitration. RChain appealed and we affirmed the trial court's decision to deny the motion to compel arbitration.[5]

RChain continued to review discovery for the underlying action pending appeal of the denial of the motion to compel arbitration.  Roupp had produced approximately 113 gigabytes in discovery in July 2020.  Review of the hundreds of documents, video files, and images was complicated by Roupp's failure to produce the metadata for the documents as specified in RChain's request for production. Without the metadata, counsel for RChain was unable to determine when Roupp downloaded or viewed the documents produced.

---

[2] To generate startup capital, RChain sold cryptocurrency tokens called "RHOCs" that would eventually be converted into tokens called "REVs" which would allow users access to resources on the blockchain network.
[3] Chapter 19.86 RCW.
[4] Chapter 21.20 RCW.
[5] A more comprehensive discussion of the facts and merits of that issue are contained in linked appeal number 81915-1-I.

RChain located several e-mails and documents in what appeared to be chronological order. A copy of the RChain Membership Agreement was found in between e-mails exchanged by Roupp and RChain that were dated August 16, 2017 and August 19, 2017. Roupp had acknowledged that he became an RChain member on or about August 29, 2017 but claimed that he never received or assented to the Membership Agreement. The chronology of the production documents suggested that Roupp had indeed received a copy of the Membership Agreement between August 16 and 19, 2017. In light of this evidence, RChain filed its January 2021 request for reconsideration of the denial of the motion to compel arbitration or an evidentiary hearing on the timing of Roupp's receipt of the Membership Agreement.[6]

As soon as RChain filed the motion for reconsideration, Roupp alerted RChain that the documents were jumbled together from different sources and were not in chronological order. This was information RChain could not have known without the metadata for the documents, which had been requested but which Roupp had failed to produce. Roupp then produced the metadata, but only for the copy of the Membership Agreement, which proved RChain's inferences about the chronology of events were incorrect. RChain struck its motion for reconsideration.

Subsequently, Roupp produced additional files with metadata. Among the new documents, RChain found that Roupp had completed a copy of its "Accredited

---

[6] The motion was filed by defendants Lucius Meredith, Evan Jensen, Ian Bloom and RChain. Defendants Alexksandr Bulkin, Navneet Suman, and Kenny Rowe joined separately.

Participant Questionnaire." The Accredited Participant Questionnaire has a section called "Verification of Purchase" that states,

> I acknowledge:
>
> a) that I have reviewed the Private Token Sale and RHOC Documents and/or Instructions presented to me, and attached hereto;
>
> (b) that the Private Token Sale documents and attachments hereto have been fully completed and executed by the appropriate party.

This acknowledgement was signed by Roupp and dated August 30, 2017.[7] Following this verification and signature page, the Questionnaire included "Exhibit A," a list entitled "RHOC Documents and/or Instructions." The list included the Membership Agreement. However, the Membership Agreement itself was not attached to the Questionnaire produced by Roupp. RChain had no record of this signed document.

RChain began investigating how Roupp acquired the blank form Questionnaire. A prospective purchaser of RHOC could access the Questionnaire in two ways—from RChain's website using the private sale participation request page or from RChain's legal document repository on GitHub.[8] If Roupp obtained the Questionnaire on GitHub, he would have seen the Membership Agreement in the legal repository but would not have been required to read and agree. By contrast, if he accessed the Questionnaire through the RChain website, he could access the private sale participation request page only after having been

---

[7] One page of the document is dated August 31, 2017. The attestation is dated August 30, 2017.

[8] GitHub (a subsidiary of Microsoft) is an online service that companies can utilize to archive their website code.

presented with the Membership Agreement and clicking to indicate acceptance of the agreement.

RChain examined the version of its website code in effect when Roupp applied for membership to determine the steps he necessarily followed in becoming a member. The membership sign-up process on the RChain website required registration with a name and e-mail address to create an account. Creating an account generated a verification e-mail where the user would click a link within the message that would return the user to RChain's website to confirm the e-mail was verified. After signing in to RChain's website, the registered user could begin the membership process. In step one, the website presented the Membership Agreement. To continue, the user was required to click an "I Agree" button to assent to the terms of the Membership Agreement. After agreeing to the Membership Agreement, the user was presented with an online invoice for the $20 membership fee. After payment, the prospective member received a receipt and welcome e-mail from RChain. Members could then access the Questionnaire from the private sale participation request page.

Roupp admits that he applied on the website to become an RChain member, paid the $20 fee, and received the e-mail confirmation of this membership. RChain produced evidence that its computer system sent Roupp the e-mail verification generated after registration of his name and e-mail address for membership on August 29, 2017 at 3:33:51 p.m. -0400. On August 29, 2017 at 3:56:49 p.m. -0400, the RChain system also sent Roupp the welcome e-mail that included a receipt for the membership fee. Roupp would have been provided the

Membership Agreement and required to click the "I Agree" button during a step in between those two computer generated e-mail messages. Roupp would have then had access to the private sale participation request page and the Questionnaire. Roupp signed the Questionnaire on August 30, 2017, the day after he would have completed the membership sign up process and agreed to the Membership Agreement.

Citing this newly discovered evidence and Roupp's misconduct in failing to timely produce the Questionnaire, RChain filed a motion to vacate the trial court's order denying the motion to compel arbitration under Cr 60(b)(3), (4), and (11).[9]

The trial court denied RChain's motion to vacate because even assuming the evidence was newly discovered, it would not have changed the decision regarding arbitration. Regarding discovery, the court reasoned,

> While it appears [Roupp] had possession of the Questionnaire and there has not been a satisfactory explanation as to why it had not been turned over earlier, there is no evidence of bad faith or nefarious conduct by [Roupp]. [RChain] ha[s] failed to show that the [Roupp] engaged in fraud, misrepresentation, or other misconduct under CR 60(b)(4) to justify vacating the prior Order.

The trial court looked at the Questionnaire and concluded,

> As [RChain] admit[s], [Roupp] could have received the Questionnaire from either agreeing to the terms of membership or from RChain's Legal Docs repository on GitHub. The GitHub repository would have allowed the [Roupp] access to the Membership Agreement, but does not appear to have required the [Roupp] to acquiesce to the Membership Agreement. The ability to "view and download the Membership Agreement from the very same page" is very different than a party agreeing to the terms of a contract to bind that party to arbitration. [RChain] fail[s] to show to this Court's satisfaction why the first possibility (clicking "I Agree" to get the Questionnaire) is so much more likely than the second possibility (retrieving from GitHub). The first possibility allows for the argument that the [Roupp] saw and

---

[9] The motion was filed by Meredith, Jensen, Bloom, and RChain. Suman, Eykholt, Bulkin, and Rowe joined separately.

agreed to the Membership Agreement. The second possibility does not.

RChain appeals.[10] A commissioner of this court requested the parties brief the issue of whether the motion to vacate was appealable as a matter of right under RAP 2.2(a) or subject to discretionary review under RAP 2.3(b).

Subsequently, the commissioner linked this appeal to the pending appeal of the order denying the motion to compel arbitration (No. 81915-1-I) and passed the issue of appealability to panel to consider with the merits.

## DISCUSSION

I.   Appealability

As a threshold issue, the parties disagree whether the order denying the motion to vacate is appealable as a matter of right under RAP 2.2(a) or requires discretionary review under RAP 2.3. RChain contends the order is appealable as of right under the Washington uniform arbitration act (WAA), chapter 7.04A RCW, as a judgment and as a substantial right. Roupp argues the WAA does not apply because the motion to vacate did not address the merits of arbitrability, and the order on the motion to vacate is interlocutory and does not affect a substantial right.

RAP 2.2(a)(3) allows appeal of "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." Here, the order at issue is a written decision that affects RChain's right to arbitrate and forecloses RChain's attempt to compel

---

[10] Meredith, Jensen, Bloom, and RChain filed a joint notice of appeal and briefing. Suman, Bulkin, and Eykholt filed separate notices of appeal and all joined in the RChain briefing. .

arbitration. It is the denial of a CR 60(b) motion to vacate. The denial of a CR 60(b) motion is appealable as a matter of right under RAP 2.2(a)(3) See In re Marriage of Flannagan, 42 Wn. App. 214, 217 n.3, 709 P.2d 1247 (1985).

II.   Motion to Vacate

RChain filed a motion to vacate the order denying its motion to compel arbitration under CR 60(b)(3), (4), and (11). "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding" for many reasons, including newly discovered evidence, fraud, misrepresentation, or misconduct. CR 60(b)(3), (4). In considering a CR 60(b) motion, a trial court should "exercise its authority liberally and equitably to preserve the parties' substantial rights." Shaw v. City of Des Moines, 109 Wn. App. 896, 901, 37 P.3d 1255 (2002). "[H]owever, the only relief that may be ordered pursuant to CR 60 is relief 'from a final judgment, order, or proceeding,' not any entitlement to affirmative relief." Fireside Bank v. Askins, 195 Wn.2d 365, 375-76, 460 P.3d 157 (2020) (quoting CR 60(b)). A successful CR 60(b) motion sets aside a prior judgment or order, it does not allow the court to grant affirmative relief. Id.

A.   Standard of Review

A decision on a CR 60(b) motion is in the court's discretion and will not be reversed without a showing of abuse of discretion. Winter v. Dep't of Social and Health Servs., 12 Wn. App. 2d 815, 829, 460 P.3d 667, review denied, 196 Wn.2d 1025, 476 P.2d 565 (2020). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Id. This

8

includes when "the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

We review de novo a trial court's decision on a motion to compel arbitration. Weiss v. Lonnquist, 153 Wn. App. 502, 510, 224 P.3d 787 (2009). RChain contends that the de novo standard should also govern a CR 60(b) motion on a decision pertaining to arbitration. According to RChain, the appeal "ultimately arises from questions of arbitrability and affects RChain's substantial rights in the same manner a motion to compel arbitration does." Moreover, RChain argues that de novo review is consistent with the WAA which allows immediate appeal of any decisions denying a motion to compel arbitration. But, RChain's request for de novo review ignores the basic purpose of a motion to vacate.

A CR 60(b) motion to vacate is not a substitute for a direct appeal and does not allow for a challenge to the underlying judgment. Winter, 12 Wn App. 2d at 830. CR 60(b) permits vacation of judgment for "reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings." Burlingame v. Consol. Mines & Smelting Co., 106 Wn.2d 328, 336, 722 P.2d 67 (1986). Errors of law in the underlying judgment must be remedied through direct appeal. Id. As result, appeal of a denial of a motion to vacate "is limited to the propriety of the denial not the impropriety of the underlying judgment." Bjustrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). Here, we are reviewing the denial of the motion to vacate, rather than the order on the motion to compel.

9

RChain's motion to vacate the order denying arbitration raises new evidence and asks the court to review whether that evidence, or the circumstances of its production, necessitates vacation of the court's order. As is proper for a CR 60(b) motion, the trial court's decision does not address the legal merits of the underlying decision on arbitrability. The motion to vacate is in the trial court's discretion, therefore, the de novo standard of review for arbitrability does not apply. We will review the trial court's denial of the motion to vacate for abuse of discretion.

B. CR 60(b)(3)

RChain argues that the trial court erred by denying the motion to vacate because newly discovered evidence showed that Roupp agreed to arbitration. A party may move to vacate for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." CR 60(b)(3). To successfully vacate a judgment for newly discovered evidence, the moving party must show that the evidence: (1) would probably change the result if the court granted a new trial, (2) was discovered since trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013).

RChain argued in its motion to vacate that "the only way a prospective RHOC purchaser such as Roupp could have gained access to the Questionnaire on the Private Sale Participation Request Page would have been to complete the membership sign-up process on RChain's website." It argues that this the

evidence shows that in order to obtain the Questionnaire, Roupp was presented with and had to agree to the Membership Agreement.

Roupp responded that the blank document was available through GitHub, and that RChain could not demonstrate that he accessed the Questionnaire through the membership application portal. Roupp also objected to RChain's evidence from the website archive on the basis that it was not newly discovered evidence.[11]

The trial court concluded:

> As [RChain] admit[s], [Roupp] could have received the Questionnaire from either agreeing to the terms of membership or from RChain's Legal Docs repository on GitHub. The GitHub repository would have allowed [Roupp] access to the Membership Agreement, but does not appear to have required [Roupp] to acquiesce to the Membership Agreement. The ability to "view and download the Membership Agreement from the very same page" is very different than a party agreeing to the terms of a contract to bind that party to arbitration. [RChain] fail[s] to show to this Court's satisfaction why the first possibility (clicking "I Agree" to get the Questionnaire) is so much more likely than the second possibility (retrieving from GitHub). The first possibility allows for the argument that [Roupp] saw and agreed to the Membership Agreement. The second possibility does not.

The denial of the motion focuses solely on the source of the document. This is likely due to the focus of the arguments, but it fails to address the independent significance of the content of the Questionnaire. Even if the blank version originated from GitHub, the signature, the acknowledgment and date are significant evidence.

---

[11] The record does not demonstrate that any of the evidence presented was excluded. RChain offered its reconstruction of the online membership process through Bloom's declaration. The trial court included Bloom's declaration in the list of evidence considered for the motion to vacate.

The existence of a Membership Agreement and its content was not in dispute. This issue was whether Roupp reviewed it and agreed. A signed version of a document is not the only way to prove agreement. Agreement may be deduced from circumstantial evidence and inference properly drawn. See Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 765, 162 P.3d 1153 (2007) ("The existence of mutual assent may be deduced from the circumstances"). The executed Questionnaire enhances the circumstantial evidence already before the court.

In signing the verification of purchase, Roupp acknowledged that he reviewed documents and attachments presented to him. Exhibit A to the Questionnaire listed the referenced documents, including the Membership Agreement. He also attested that the "Private Token Sale documents and attachments hereto have been fully completed and executed by the appropriate party." In response to Roupp's claims that RChain had no proof that he agreed to arbitration, RChain could have relied on the executed Questionnaire to argue that Roupp admitted to reviewing and agreeing to the Membership Agreement.

Additionally, Roupp signed and dated the verification of purchase and its acknowledgements on August 30, 2017. This may be viewed as corroborating the interview data set evidence that Roupp's membership documents were in order. According to RChain's spreadsheet that tracked the membership verification

interview process, employee Steve Careaga reviewed Roupp's membership documents and confirmed they were "good" on August 31, 2017 at 10:57 p.m.[12]

Having decided the Questionnaire may not have been accessed through the membership process on the RChain website, the trial court did not address the strong evidence of the sequence of screens presented to Roupp in the application process. This evidence appears to show that in order for Roupp to get a membership fee invoice, pay that fee, and to receive an e-mail welcome and receipt, he had to have been presented the Membership Agreement and had to click the "I agree" box. He admits he paid the fee on line and got the receipt. This evidence is independent of where he accessed the Questionnaire.

The trial court appears not to have considered all of the evidence. This is an abuse of discretion. We remand to the trial court to reconsider the motion to vacate under CR 60(b)(3).

## C. CR 60(b)(4)

RChain argues that CR 60(b)(4) requires vacation of the underlying order because Roupp's failure to produce the Questionnaire was discovery misconduct that substantially prejudiced RChain's ability to present its case for arbitration. CR 60(b)(4) allows for relief from judgment because of "[f]raud (whether . . . intrinsic

---

[12] The membership verification spreadsheet also includes a column labeled "Quest U." Whether this column indicates that the Questionnaire was uploaded is a question of fact to be addressed. If it indicates the Questionnaire was uploaded, Roupp's assertion that there was no evidence he submitted the Questionnaire to RChain is contradicted. For Roupp, this column contains a hyperlink for "Question" rather than a non-hyperlinked "No Quest" listed for other users. The hyperlinked "Question" suggests that Roupp had completed and uploaded the Questionnaire to RChain before the August 31, 2017 documents check.

or extrinsic), misrepresentation, <u>or other misconduct of an adverse party</u>." (Emphasis added.) The rule is aimed at judgments unfairly obtained. <u>Sutey v. T26 Corp.</u>, 13 Wn. App. 2d 737, 756, 466 P.3d 1096, <u>review denied</u>, 476 P.3d 568 (2020). Under this subsection, "the fraudulent conduct or misrepresentation must <u>cause</u> the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." <u>Lindgren v. Lindgren</u>, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). The party attacking the judgment must establish the misconduct by clear and convincing evidence. <u>Id.</u> "Clear and convincing evidence is that which shows the ultimate fact in issue to be highly probable." <u>Winter</u>, 12 Wn. App.2d at 830. When discovery violations are alleged, "the disobedient party's discovery violations must be 'willful or deliberate and [one that] substantially prejudiced the opponent's ability to prepare for trial.'" <u>Roberson v. Perez</u>, 123 Wn. App. 320, 333, 96 P.3d 420 (2004) (emphasis omitted) (alteration in original) (quoting <u>Burnet v. Spokane Ambulance</u>, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)). An inadvertent error in failing to disclose is considered willful because "'willful' violation means a violation without a reasonable excuse."[13] <u>Carlson v. Lake Chelan Cmty. Hosp.</u>, 116 Wn. App. 718, 737, 75 P.3d 533 (2003) (internal quotation marks omitted) (quoting <u>In re Estate of Foster</u>, 55 Wn. App. 545, 548, 779 P.2d 272 (1989)).

---

[13] <u>Carlson</u> concerned sanctions for discovery abuse under CR 26 and CR 37 rather than a CR 60(b)(4) motion to vacate based on discovery misconduct. 116 Wn. App. at 737. <u>Roberson</u> cites to <u>Carlson</u> in a discussion of discovery misconduct under CR 37 and CR 60(b)(4) motions. 123 Wn. App. at 332-33. Likewise, <u>Taylor v. Cessna Aircraft Co.</u>, 39 Wn. App. 828, 836, 696 P.2d 28 (1985), also states that "[a] violation of the discovery rules is willful if done without a reasonable excuse" in its analysis of CR 26 and CR 60(b)(4).

The trial court noted concern about Roupp's failure to timely produce the Questionnaire but ultimately disagreed that the conduct required vacation of the order:

> While it appears [Roupp] had possession of the Questionnaire and there has not been a satisfactory explanation as to why it had not been turned over earlier, there is no evidence of bad faith or nefarious conduct by [Roupp]. [RChain] ha[s] failed to show that [Roupp] engaged in fraud, misrepresentation, or other misconduct under CR 60(b)(4) to justify vacating the prior Order.

This decision improperly concludes that Roupp's failure to timely produce the responsive document was not misconduct. Roupp was in possession of the document, failed to produce it as requested, and lacked a "satisfactory explanation."

In response to the allegations of discovery misconduct in RChain's motion to vacate, Roupp argued, "[RChain] ha[s] not even contended, not to mention proved, that [Roupp] willfully or deliberately withheld the Questionnaire. In reality, [Roupp] provided [RChain] with metadata and the supplemental production of documents previously identified as duplicative, including the Questionnaire, as a professional courtesy." In this response, Roupp does not dispute that he was in possession of the Questionnaire in July 2020, before the RChain's motion to compel arbitration. Moreover, Roupp's only attempt to explain the omission of the document is inaccurate as RChain's search of Roupp's prior production of documents failed to locate the Questionnaire. The Questionnaire was not duplicative.

The court acknowledged that Roupp failed to explain why the Questionnaire was not timely produced as responsive to RChain's request for production. This

15

was in fact a willful violation of discovery and was misconduct for purposes of CR 60(b)(4). Roberson, 123 Wn. App. at 333. The trial court did not identify a willful violation. Instead, the trial court appears to have focused on the absence of "bad faith" or "nefarious conduct" which is not the standard for misconduct. The trial court relied on an incorrect standard to deny the motion to vacate. This was an abuse of discretion. See Gildon, 158 Wn.2d at 494.

A motion to vacate based on discovery violations requires both willful or deliberate action and substantial prejudice to the opponent's ability to prepare for trial. See Roberson, 123 Wn. App. at 333. The trial court did not address whether Roupp's failure to produce the Questionnaire substantially prejudiced RChain's preparation for the motion to compel arbitration. We remand to the trial court to reconsider RChain's motion to vacate in light of Roupp's discovery misconduct.

### D. CR 60(b)(11)

RChain argues the trial court erred by failing to consider its motion to vacate under CR 60(b)(11). Cr 60(b)(11) allows the court to vacate for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11) should be applied only in situations involving extraordinary circumstances not covered by any other section of the rule. Flannagan, 42 Wn. App. at 221. RChain's motion to vacate mentions CR 60(b)(11) only twice without analysis. RChain instead relied on CR 60(b)(3) and (4) and claimed that "[r]egardless, the Court should nonetheless vacate its Order under CR 60(b)(11)." RChain did not provide the trial court with any argument in support of such extraordinary circumstances. The trial court did not abuse its discretion by failing to vacate its order on this ground.

We reverse and remand for additional proceedings consistent with this opinion.

_Appelwick, J._

WE CONCUR: