FILED
COURT OF APPEALS
DIVISION II
2015 AUG 18 AM 9: 03
STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Marriage of:

TODD EVAN SCHNEIDERMAN,

Appellant.

and

JULIE TERESA RODGERS,

Respondent.

No. 45874-8-II

UNPUBLISHED OPINION

MAXA, P.J. — Todd Schneiderman appeals the trial court's order vacating provisions of Schneiderman and Julie Rogers' dissolution decree under CR 60(b)(3) and (4), as well as the trial court's award of attorney fees to Rogers.

We hold that the trial court abused its discretion under CR 60(b)(4) by vacating the dissolution decree because (1) Rogers did not rely on Schneiderman's misrepresentations regarding the reliability of quarterly bonuses from his business, (2) the record does not support a finding that Schneiderman made misrepresentations regarding his anticipated 2011 income, (3) Schneiderman cannot be held responsible for his attorney's misconduct regarding the attorney's trust account, (4) any misconduct Schneiderman committed regarding his attorney's trust account did not prevent Rogers from fully and fairly presenting her case, and (5) Schneiderman's pretrial discovery violations did not prevent Rogers from fully and fairly presenting her case. We also hold that the trial court erred in vacating the dissolution decree under CR 60(b)(3) because Rogers failed to file her amended motion to vacate based on that subsection within a year after entry of the dissolution decree. However, we affirm the trial court's award of attorney fees to

Rogers does not challenge the trial court's authority to award attorney fees or its express finding that Schneiderman engaged in intransigent conduct.

We reverse and vacate the trial court's order vacating the spousal maintenance provisions and asset/liability division of the parties' dissolution decree of dissolution under CR 60(b)(3) and (4). But we affirm the trial court's order awarding Rogers attorney fees. We remand to the trial court for proceedings consistent with this opinion.

FACTS

Schneiderman and Rogers married in April 1990. The couple had two daughters. They separated in October 2009, and Schneiderman filed for dissolution of the marriage in December 2009. The case was assigned to Judge Karlynn Haberly, who handled all pre-trial matters. The case ultimately was tried in July 2011 before an agreed referee.

*Schneiderman Income*

Schneiderman is an eye surgeon. He owns a surgical ophthalmology practice along with a partner who became a 50 percent owner in September 2008. Another doctor joined the practice as an associate in 2010. Schneiderman also holds minority interests in two other entities that apparently do not generate significant income.

Since 2008, Schneiderman's income from his ophthalmology practice has had two main components: (1) a $35,000 monthly draw, which included a $5,000 management fee and (2) quarterly distributions of profits, which the parties referred to as "bonuses." Clerk's Papers (CP) at 8. Each partner's quarterly bonuses were calculated by subtracting the practice's overhead and expenses from gross revenue, splitting 30 percent of that amount between the two partners, and dividing the remaining 70 percent based on production. Schneiderman also received an income shift consisting of 10 percent of his partner's income as a buy in to the practice.

Throughout the dissolution proceedings, Schneiderman consistently stated that his monthly salary was $35,000 and argued that this was his only reliable source of income. However, Schneiderman also disclosed to Judge Haberly and to Rogers that he received quarterly bonuses. For instance, a week after Schneiderman filed the dissolution petition, Judge Haberly entered a temporary order providing for the payment of various expenses from Schneiderman's "monthly income" of $35,000 per month. CP at 933. But the order further stated that division or use of Schneiderman's future quarterly bonus income would be based on future court orders or agreements between the parties. And a subsequent order also addressed allocation of Schneiderman's quarterly bonuses.

Rogers was informed of the amounts of Schneiderman's bonuses for 2010 and the first quarter of 2011 before trial. On January 7, 2011, Schneiderman filed a motion regarding distribution of his 2010 bonuses, disclosing that the first quarter bonus totaled $70,000 and the unpaid bonuses for the other three quarters totaled $215,000.[1] On April 8, 2011, Schneiderman filed a motion regarding the distribution of his first quarter 2011 bonus, which he disclosed totaled $61,506.

Rogers also was aware that Schneiderman's annual income far exceeded the $420,000 he received in monthly draws from his practice. The parties' joint tax returns showed that Schneiderman earned total income of $1,024,295 for 2008 and $1,024,356 for 2009. Schneiderman's draft 2010 tax return showed total income of $769,147. This amount was consistent with Schneiderman's April 2011 motion regarding his first quarter 2011 bonus, in which his business consultant stated that his income for 2010 ended up being around $730,000.

---

[1] Schneiderman claimed that an accounting software problem had delayed the calculation and payment of the last three bonuses in 2010.

3

*Attorney Trust Fund*

In December 2009, Judge Haberly ordered that the parties' current checking account be held in the trust account of Schneiderman's attorney, James Province, after certain disbursements were made. The remaining funds were to be used only by agreement or court order. In March 2010, Judge Haberly ordered Schneiderman to pay $6,000 from each quarterly bonus to Rogers and to place the remainder into trust to be divided by agreement or further court order.

In July 2010, Schneiderman acknowledged that he had not placed any amounts in trust because both parties were paying necessary expenses from those funds. Rogers learned after trial that Schneiderman did not transfer any funds into Province's trust account until October 2010. However, by the time of trial there was $125,296 in the trust account.

*Rogers' Discovery Requests*

The parties jointly retained certified public accountant (CPA) Steve Kessler to value Schneiderman's business interests. In March 2010, Judge Haberly entered an order requiring Schneiderman to provide to Rogers' counsel all documents necessary to value Schneiderman's practice, surgery center, and other business interests. Counsel then could provide those documents to Kessler.

In May 2010, Rogers submitted to Schneiderman a set of 42 interrogatories and 76 requests for production. Schneiderman provided responses in July 2010. His response included producing over 3,000 pages of materials, primarily bank statements, general ledgers, and checks.

In September 2010, Rogers filed a motion to compel answers to the interrogatories and requests for production, claiming that Schneiderman's responses were evasive or incomplete. Rogers' attorney prepared a chart showing a detailed list of Schneiderman's failure to answer interrogatories and to provide requested documents relating to his actual income. Rogers

claimed that many of Schneiderman's responses were deficient because the responses simply stated that the requested information had been provided to Kessler. In addition, Rogers argued that Schneiderman failed to comply with an agreement to show specifically what documents in Kessler's possession corresponded to relevant requests for production.

Judge Haberly denied Rogers' motion to compel. The trial court stated that Schneiderman had answered and responded to the discovery requests. Rogers did not file any additional discovery motions before trial.

*Trial by Referee*

In July 2011, the parties stipulated to resolve all remaining dissolution issues in a trial before a referee, pursuant to RCW 4.48.130. Attorney Robert Beattie was selected as the referee. Trial was held in July 2011.

One issue at trial was the amount of Schneiderman's past and future income, which related to Rogers' claim for spousal maintenance. In her trial brief, Rogers requested spousal maintenance of $25,000 based on Schneiderman's "enormous income." CP at 2770. Rogers argued, "The court is reminded that [Rogers'] temporary order of maintenance was based only on [Schneiderman's] base salary of roughly $40,000 per month and did not fully recognize his annual income which includes significant bonuses that generate a monthly income of $83,300 a month when averaged over the year." CP at 2783-84. Rogers based the $83,300 figure on Schneiderman's income in 2008 ($1,024,295) and 2009 ($1,024,356). She also argued that "[s]imilar earnings are anticipated for 2011." CP at 2784.

Schneiderman's 2008 and 2009 tax returns and his draft 2010 tax return were submitted as joint trial exhibits. These tax returns showed that Schneiderman's 2010 income had decreased significantly from the previous two years to $769,147. Schneiderman also testified regarding his

5

anticipated 2011 income. He estimated that in addition to his base draw of $420,000 annually, he expected to receive quarterly bonuses totaling $150,000 to $200,000 for the year. In total, Schneiderman estimated that his total 2011 income would be $550,000 to $600,000.

It appears that Province submitted a self-drafted ledger of his trust account to the referee, which held the parties' marital funds. Neither Schneiderman nor Province submitted authenticated bank statements for the trust account.

Following trial, the referee issued an oral decision. With regard to Schneiderman's income, the referee found that Schneiderman's 2010 income was most reflective of his future income because it was the most recent income information and because it was consistent with future income forecasts. The referee stated, "The dilemma always is to figure out what is future income. And the only way to resolve that realistically is to look at the most recent years and listen to the testimony." IV Report of Proceedings at 715. The referee calculated that Schneiderman earned approximately $55,000 in monthly income.

The referee awarded Rogers monthly maintenance of $11,000 from August 2011 through July 2018 and $7,000 from August 2018 to July 2021. The referee also awarded Rogers a significant amount of community assets and all funds still held in Province's trust account. Rogers ended up receiving 53 percent of the community assets. On October 14, 2011, Judge Haberly entered a decree of dissolution and findings of fact and conclusions of law based on the referee's decision.[2]

---

[2] Rogers appealed the order, but the appeal was dismissed by this court in October 2012 after Rogers failed to file an opening brief.

*CR 60(b) Motion to Vacate the Dissolution Decree*

On October 12, 2012, just less than a year after entry of the dissolution decree, Rogers filed a motion to show cause why the dissolution decree should not be vacated under CR 60(b). This motion was based on her claim that Schneiderman made false statements regarding his 2011 income that could not have been discovered before trial because of his false testimony and failure to respond to discovery.[3] Rogers produced a spreadsheet created by Joseph Forde, Schneiderman's CPA, purportedly demonstrating that Schneiderman earned $108,686 per month in the first six months of 2011.

Schneiderman opposed the motion to show cause and made a motion requesting that Judge Haberly hear the CR 60(b) motion before her retirement, or in the alternative, that the motion be dismissed. A court commissioner referred the motion to show cause to Judge Haberly for consideration. In December 2012, Judge Haberly ruled that that she did not need to be the judge to hear the motion. Rogers' motion was dormant for the next eight months.

*Attorney Misconduct*

In December 2012, Rogers filed a grievance with the Washington State Bar Association (WSBA) alleging that Schneiderman's lawyer, Province, had mishandled the trust funds belonging to the marital community. Province did not cooperate with the WSBA's investigation, and Schneiderman also chose not to participate in the investigation.

In March 2013, the WSBA mailed a report to Rogers and Province stating the WBSA's analysis and conclusion. The WSBA uncovered evidence that Province had mishandled funds belonging the parties' marital community by transferring at least $14,000 from his trust account

---

[3] Rogers also argued that the dissolution decree did not distribute a major asset and that she had discovered an undisclosed trust and bank account. These claims were not pursued in the trial court and have not been addressed in this appeal.

into his general account between October and December 2010 and drawing $30,000 from the parties' marital community to give to another client in December 2010. The report also concluded that on June 15, 2011, Province had given a false accounting of this and other transactions to Rogers and her lawyers. Finally, the report concluded that Province had intentionally failed to disclose multiple transactions that he made with the marital community funds in 2010 and 2011. However, the WSBA was unable to determine if Rogers ultimately received all money owed to her.

*Amended Motion to Vacate*

In August 2013, Rogers filed an amended motion for an order to show cause to vacate the decree of dissolution. Rogers asserted that (1) the dissolution decree should be vacated under CR 60(b)(3) because the WSBA report documenting Province's misconduct regarding the trust account and Forde's spreadsheet constituted newly discovered evidence, and (2) the dissolution decree should be vacated under CR 60(b)(4) because Schneiderman engaged in fraud, misrepresentation, and willful discovery violations regarding the amount of his income and the trust account. Because Judge Haberly had retired, the case was assigned to a different judge.

The trial court heard argument on the motion for an order to show cause. Schneiderman argued that the evidence was insufficient for the issuance of the show cause order. The trial court granted Rogers' motion for an order to show cause. The parties then submitted additional briefing and declarations, which included extensive documents and transcripts. Rogers also submitted new evidence: a chart showing monthly Medicare revenues for Schneiderman's practice from 2009 through 2012, obtained through a Freedom of Information Act request. The document showed that during the first seven months of 2011, the practice had received higher Medicare revenues than any previous seven-month period.

*Vacation of Dissolution Decree*

In December 2013, the trial court issued an order vacating the spousal maintenance provisions and asset/liability division of the parties' dissolution decree under CR 60(b)(3) and (4). The trial court issued factual findings that (1) Schneiderman made deliberate, false representations regarding his income; (2) Schneiderman was involved with Province's trust account misconduct and also engaged in his own misconduct regarding the trust account; (3) Schneiderman engaged in discovery violations regarding the failure to provide records relating to his income and the trust account; and (4) the WSBA report, the Forde spreadsheet, and the Medicare reimbursement summary sheet were newly discovered evidence that could not have been discovered in time to move for a new trial. The trial court entered conclusions of law that clear and convincing evidence supported vacation of the dissolution decree under both CR 60(b)(3) and (4).

The trial court awarded Rogers $58,299 in attorney fees for the CR 60(b) proceedings after finding that Schneiderman had "engaged in a pattern of intransigent conduct." CP at 2273.

Schneiderman appeals.

## ANALYSIS

A. VACATION UNDER CR 60(b)(4)

The trial court vacated the dissolution decree under CR 60(b)(4) based on Schneiderman's misrepresentation and/or misconduct relating to his income, the Province trust account, and pretrial discovery. Schneiderman challenges many of the trial court's factual

findings and argues that the trial court erred in vacating the dissolution decree under CR 60(b)(4).[4] We agree.

1. Legal Principles

CR 60(b)(4) authorizes a trial court to vacate a judgment for "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." However, vacation of a judgment is an extraordinary remedy. *See Dalton v. State*, 130 Wn. App. 653, 665, 124 P.3d 305 (2005). Therefore, there must clear and convincing evidence of fraud, misrepresentation, or misconduct in order to vacate a judgment. *Id.*

In order to base vacation of a judgment on fraud, the trial court must make findings of fact and conclusions of law regarding each of the nine elements of common law fraud. *In re Marriage of Maddix*, 41 Wn. App. 248, 252, 703 P.2d 1062 (1985). But because misrepresentation or other misconduct also are grounds for vacation of a judgment, the moving party may not be required to prove all the elements of fraud to obtain relief under CR 60(b)(4). *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 825, 225 P.3d 280 (2009). For instance, vacation may be appropriate even if the misrepresentation was innocent or negligent rather than willful. *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 371, 777 P.2d 1056 (1989).

Even if the moving party demonstrates that the other party engaged in misrepresentation, a trial court may grant relief under CR 60(b)(4) only if the moving party presents clear and convincing evidence of at least two additional elements. *See id.* at 371-72. First, the moving

---

[4] Schneiderman also argues that Rogers failed to file her motion to vacate within a reasonable time as required by CR 60(b). However, the record clearly shows that Schneiderman never argued before the trial court that either the original motion or the amended motion for relief under CR 60(b)(4) was not filed within a reasonable time. Under RAP 2.5(a), Schneiderman cannot make this argument for the first time on appeal. Therefore, we do not address this argument. Schneiderman did argue in the trial court that Rogers did not meet the one-year deadline for relief under CR 60(b)(3), which we discuss below.

party must have relied on or been misled by the misrepresentation. *See id.* Reasonable reliance is an element of actionable misrepresentation. *See Dewar v. Smith*, 185 Wn. App. 544, 561-62, 342 P.3d 328 (2015).

Second, there must be some connection between the misrepresentation and obtaining the judgment. *See Hickey*, 55 Wn. App. at 372. The rule is aimed at judgments that were unfairly obtained. *Dalton*, 130 Wn. App. at 668. Therefore, the wrongful conduct must have "prevented a full and fair presentation" of the moving party's case. *Id.* at 665, 668. Fraud or misconduct that is harmless will not support a motion to vacate.[5] 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE § 8, at 613 (6th ed. 2013).

The decision to grant or deny a motion to vacate a judgment under CR 60(b) is within the trial court's discretion. *Jones v. City of Seattle*, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Therefore, we review CR 60(b) orders for abuse of discretion.[6] *Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 254, 327 P.3d 1309, *review denied*, 181 Wn.2d 1029 (2014). A trial court abuses its discretion if its decision is based on untenable grounds or reasons. *Id.*

When the trial court makes findings of fact and credibility determinations based on affidavits alone, we must determine whether substantial evidence supports those findings and whether the findings support the conclusions of law. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003). However, because the standard of proof in CR 60(b)(4) motion is

---

[5] On the other hand, the moving party is not required to show that the misrepresentation materially affected the outcome of the trial. *Mitchell*, 153 Wn. App. at 825.

[6] Schneiderman argues that we should apply a de novo standard in reviewing the trial court's CR 60(b) order because the trial court based its decision entirely on a review of affidavits and documentary evidence. We disagree. Here, the trial court had to weigh the materials submitted and resolve conflicts in the evidence. Under these circumstances, a de novo review is not appropriate. *See In Re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003); *In Re Parentage of Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003).

clear and convincing evidence, the substantial evidence must be highly probable. *Dalton*, 130

Wn. App. at 666. Therefore, our review is limited to determining whether the evidence shows

that it was *highly probable* that Schneiderman engaged in misrepresentation or misconduct, that

Rogers relied on any misrepresentation, and that any misrepresentation or misconduct prevented

Rogers from fully and fairly presenting her case. *Id.* at 666, 668.

2.    Misrepresentation Regarding Income

The trial court found "clear and convincing evidence of [Schneiderman's]

misrepresentation and misconduct regarding his income" throughout the dissolution case.[7] CP at

870. The trial court primarily based this conclusion on two findings: (1) "[Schneiderman]

regularly indicated to the court, [Rogers], and the referee that his income was $35,000 per month

and that any additional distributions were not predictable or reliable, even though the evidence

shows that [Schneiderman] consistently received quarterly distributions," CP at 870; and (2)

"[Schneiderman] testified during the trial by referee that his income was declining for 2011 at a

time when he knew or should have known that his 2011 income would be as high or higher than

previous years." CP at 870.

We hold that the evidence supported the trial court's finding that Schneiderman made

misrepresentations regarding the reliability of his quarterly distributions, but that these

misrepresentations do not support relief under CR 60(b)(4) because there is no evidence that

Rogers or the referee reasonably relied on them or that they prevented a full and fair presentation

of Rogers' case. We also hold that the evidence did not support the trial court's finding that

---

[7] The trial court suggested that Schneiderman engaged in fraud regarding his expected income, but also found misrepresentation "[r]egardless of whether [Schneiderman's] statements regarding his income rise to the level of common law fraud." CP at 871. On appeal, Rogers addressed only misrepresentation. As a result, we do not address fraud.

12

Schneiderman made misrepresentations of existing facts regarding his 2011 income. Accordingly, we hold that the trial court abused its discretion by vacating the dissolution decree on these grounds.

> a. Statements Regarding Additional Distributions

We agree with the trial court that Schneiderman or his counsel repeatedly told Rogers, Judge Haberly, and the referee that his monthly income was $35,000, and that his quarterly distributions should not be counted as monthly income because they were unreliable. However, the issue is whether these representations to the court amounted to misrepresentation or misconduct sufficient to vacate the dissolution decree under CR 60(b)(4).

The threshold question is whether Schneiderman's statements were misrepresentations; *i.e.*, false statements of an existing fact. Here, Schneiderman's statements that his only *guaranteed* income was $35,000 per month were true. As Schneiderman points out, his statements "reflected the undisputed fact that bonuses were not set in time or amount, because they depended on a number of factors including hours worked, patients seen, and accounts receivable." Br. of Appellant at 27. His practice's quarterly distributions involved a division of net profits for the quarter. Whether or not a bonus was paid would depend on whether the practice had any net profits. There is nothing in record suggesting that quarterly bonuses were guaranteed, and in fact, Schneiderman testified that there had been times that quarterly bonuses were not paid.

Further, the implication of Schneiderman's statements that his quarterly distributions would not be a reliable source of his income *in the future* would not support a finding of misrepresentation. Misrepresentation requires a false statement of an *existing* fact. *Landstar Inway, Inc. v. Samrow*, 181 Wn. App. 109, 124, 325 P.3d 327 (2014). Whether or not quarterly

distributions would be a reliable source of Schneiderman's income in the future did not involve an existing fact.

However, Schneiderman's repeated claim that the quarterly bonuses did not constitute *reliable* income appears to be false based on the income information in the record. In both 2008 and 2009, Schneiderman earned approximately $600,000 more than his guaranteed monthly income. Even in 2010 Schneiderman earned over $250,000 more than his guaranteed monthly income. Therefore, in the recent past the quarterly distributions clearly had been a reliable source of Schneiderman's income. Accordingly, we hold that sufficient evidence supported the trial court's finding that Schneiderman's statements that his quarterly distributions were not a reliable source of his income were false statements of an existing fact.

The next question is whether Rogers or the referee reasonably relied on the truth of Schneiderman's misrepresentation that his quarterly distributions were not a reliable source of income or the misrepresentation prevented a full and fair presentation of Rogers' case.[8] *Dalton*, 130 Wn. App. at 668; *Hickey*, 55 Wn. App. at 372.

The record is clear that Rogers did not accept Schneiderman's representations about the unreliability of the quarterly distributions. Schneiderman's 2008, 2009, and 2010 tax returns were submitted as trial exhibits, so both Rogers and the referee knew that in recent years Schneiderman had received substantial income above his guaranteed monthly payments. Further, Rogers expressly argued that Schneiderman's 2008 and 2009 income should be used to determine spousal maintenance. In her trial brief, Rogers argued, "The court is reminded that the temporary order of maintenance was based only on his base salary of roughly $40,000 per month

---

[8] Because we conclude that Schneiderman's testimony regarding his monthly income was not false, we do not address whether Rogers reasonably relied on these statements.

and did not fully recognize his annual income which includes significant bonuses that generate a monthly income of $83,300 a month when averaged over the year." CP at 2783-84. Rogers based the $83,300 figure on Schneiderman's income in 2008 ($1,024,295) and 2009 ($1,024,356). She also argued that "[s]imilar earnings are anticipated for 2011." CP at 2784.

The referee also did not rely on Schneiderman's statements that his only reliable income was $35,000 a month. Instead, the referee based his decision on a finding that Schneiderman's monthly income in the future would be approximately $55,000. This necessarily included a finding that in the future Schneiderman would receive quarterly distributions totaling $220,000 per year.

Finally, the ultimate question is whether Schneiderman's misrepresentation regarding the reliability of quarterly distributions in the past prevented a full and fair presentation of Rogers' case. *See Dalton*, 130 Wn. App. at 668. Here, Schneiderman's misrepresentation did not prevent Rogers from arguing that Schneiderman's future income should be based on the significant quarterly distributions he received in 2008 and 2009. Instead, it appears that Rogers and the referee simply ignored them.

Accordingly, we hold that although Schneiderman's statements that his quarterly distributions were not reliable constituted a misrepresentation, neither Rogers nor the referee relied on them and they did not prevent Rogers from fully and fairly presenting her case. Therefore, these misrepresentations do not support relief under CR 60(b)(4).

b. 2011 Income

Schneiderman testified at trial that in 2011 he only anticipated receiving quarterly distributions amounting to $150,000 to $200,000, and therefore his total 2011 income likely would amount to $550,000 to $600,000, including his base draw of $420,000. The trial court

15

found that this testimony constituted a misrepresentation because the Forde spreadsheet showed that Schneiderman's 2011 income was $108,686 per month for the first part of 2011 and that another document showed that his practice's Medicare revenues were higher in the first part of 2011 than in previous years. The trial court found that Schneiderman had not provided any documentation to contradict his actual 2011 income through the trial by referee.

The record shows that the trial court misinterpreted the Forde spreadsheet, overlooked Schneiderman's evidence regarding his actual income for the first half of 2011, and improperly relied on a Medicare document that had dubious relevance. As a result, the evidence does not support a finding that it was highly probable that Schneiderman misrepresented his 2011 income.

First, Forde's spreadsheet showed that Schneiderman's 2011 income was $1,304,233, which derived from the ophthalmology practice's K-1 form, less certain expenses. The spreadsheet does not state that Schneiderman actually received $108,686 in each month, nor does Rogers provide any evidence that Schneiderman received those amounts each month. In fact, it was undisputed throughout the dissolution proceedings that Schneiderman received $35,000 per month and quarterly bonuses. Given this evidence, the only reasonable interpretation of the spreadsheet is that Forde divided Schneiderman's 2011 annual income by 12, and allocated $108,686 to each month during 2011. As a result, there is insufficient evidence to support the trial court's finding that Schneiderman had earned more in the first half of 2011 than the $550,000 to $600,000 Schneiderman testified that he expected to receive for the entirety of 2011.

Second, despite the trial court's contrary finding, Schneiderman did produce evidence of his actual income during the first half of 2011. Schneiderman submitted an exhibit showing his actual distributions through the end of July 2011, which totaled $356,506. The distributions included his $35,000 monthly income, a first quarter bonus of $61,506, and an undated $50,000

payment described only as "distribution." CP at 355. Significantly, these distributions show that Schneiderman's monthly income through July 2011 was approximately $50,930 per month or approximately $611,160 per year. This evidence is consistent with Schneiderman's testimony that he expected his total 2011 income to be $550,000 to $600,000. And Rogers never produced any direct evidence that Schneiderman actually received more than $356,506 during the first seven months of 2011 or that he should have known that he would earn substantially more than he estimated in the last five months of the year.

Third, the Medicare document that Rogers obtained pursuant to a Freedom of Information Act request does show that the total Medicare payments that Schneiderman's practice received during the first seven months of 2011 were higher than the amounts received in the last seven months of 2010 and significantly higher than the amounts received in 2009. However, the relevance of this document with regard to potential misrepresentation is suspect. Because the document contains 2012 numbers, it was prepared sometime in 2013. Rogers has provided no evidence that this information was available to Schneiderman at the time of trial. In addition, Schneiderman explained that the document showed Medicare payments for all three doctors working at the practice, and Rogers provided no evidence regarding the impact of Medicare payments to the entire practice on Schneiderman's income. Finally, Rogers provided no evidence regarding the practice's non-Medicare income during the first half of 2011. Presumably, increased Medicare payments during the first part of 2011 would not result in increased income if non-Medicare payments had decreased.[9]

---

[9] In addition, the practice's Medicare payments for 2010 were significantly higher than Medicare payments for 2009 even though Schneiderman's 2010 income was significantly lower than his 2009 income. This calls into question the relationship between Medicare payments and Schneiderman's income.

At best, the evidence on which the trial court relied in finding misrepresentation gave rise to an inference that Schneiderman knew or should have known at the time of trial that his 2011 income would be significantly greater than 2010. However, the legal standard is clear and convincing evidence – whether the evidence in the record showed that it was highly probable that Schneiderman misrepresented his 2011 income. *Dalton*, 130 Wn. App. at 666. We hold that the evidence does not support a finding that it was highly probable that Schneiderman knew or should have known at the time of trial that his 2011 income would be significantly higher than the estimated amounts in his trial testimony.

### 3. Misconduct Regarding Trust Account

The trial court found "significant misconduct, misrepresentation, and mismanagement of the funds" that were held in Province's trust account and that the referee ultimately awarded to Rogers. CP at 871. Schneiderman argues that the trial court erred in vacating the dissolution decree on this basis because the finding was based only on Province's misconduct, not on his own misconduct. We hold that the trial court erred by vacating the dissolution decree on the basis of Province's misconduct, and also hold that the trial court's findings were not supported by evidence that it was highly probable that Schneiderman himself engaged in misconduct regarding Province's trust account.

### a. Province Misconduct

As the trial court noted, the WSBA investigation concluded that Province had engaged in serious criminal conduct involving fraud, theft, and dishonesty regarding the trust fund. The WSBA investigation also concluded that Province provided a false accounting and ledger to Rogers and to the referee when Province knew the information was false. However, the trial court made no finding that Schneiderman was involved in this misconduct. In fact, the trial court

expressly found that "[i]t is *unknown* the extent to which [Schneiderman] was involved in the misconduct regarding the trust account." CP at 873 (emphasis added). As a result, the issue here is whether Schneiderman can be held responsible for Province's misconduct under CR 60(b)(4).

In general, the actions of an attorney authorized to appear for a client are binding on the client. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 679, 41 P.3d 1175 (2002). However, the cases holding that the actions of an attorney are binding on the client generally involve the attorney's conduct in the course of litigation. *See id.* at 679-80. Here, Province's role with regard to the trust account was different. In a sense, he was operating as an officer of the court in holding funds in trust for the benefit of both parties and in providing an accounting of those funds to Rogers and the referee. He technically was not acting as Schneiderman's attorney in this context. Rogers has cited no authority for the proposition that the misconduct of an attorney regarding the misuse of trust account funds should be binding on his client.

Further, there are cases holding that a client will not be held responsible for certain attorney misconduct committed without the client's authorization. *Demopolis v. Peoples Nat'l Bank of Wash.*, 59 Wn. App. 105, 117-18, 796 P.2d 426 (1990) (client not liable for attorney's unauthorized defamatory communications); *Fite v. Lee*, 11 Wn. App. 21, 29, 521 P.2d 964 (1974) (client not liable for attorney's abuse of process outside the scope of agency). In *Fite*, we stated, "[b]y its very nature, an abuse of legal process by an attorney . . . violates an attorney's oath, his canons of ethics, and his duty to the public as an officer of the court. . . . Accordingly, the scope of the attorney's implied authority as an agent should not, as a matter of law, extend to acts which constitute an abuse of legal process." 11 Wn. App. at 28-29.

19

Here, Province's misconduct was similar to that discussed in *Fite* in that Province violated the canons of professional ethics and his duties to the public as an officer of the court. And Rogers submitted no evidence that Schneiderman knew of or consented to Province's misconduct. Based on our discussion of agency principles in *Fite*, it necessarily follows that Province's misconduct was undertaken outside the scope of his agency to bind his client, Schneiderman.

We hold that for purposes of CR 60(b)(4), Schneiderman is not responsible for Province's misconduct regarding his trust account. Therefore, we hold that the trial court abused its discretion to the extent that it vacated the dissolution decree based on Province's misconduct.

      b.    Schneiderman Misconduct

Apart from Province's misconduct, the trial court found that Schneiderman engaged in misconduct because he failed to deposit funds into a trust account as ordered in Judge Haberly's temporary order in December 2009. The trial court noted that Schneiderman did not deposit any funds into the trust account until October 2010. Even then, the trial court noted that Schneiderman did not comply with the court's order requiring him to place all distributions received from his business into the trust account. The trial court cited as an example the fact that Schneiderman used $119,000 of his 2010 distributions to pay taxes before Judge Haberly ruled on the matter.

However, the record shows that to the extent Schneiderman engaged in misconduct by not depositing funds in the trust account before October 2010 and by not depositing certain funds in the trust account as required, Rogers was aware of this misconduct long before trial. The temporary order required that the parties' bank account be placed in a trust account. On July 8, 2010, Schneiderman filed a declaration with the court acknowledging that funds had not yet been

20

transferred to a trust account. Schneiderman explained that he had not transferred the funds because both parties needed to access those funds to pay taxes and other expenses.

With regard to the $119,000 tax payment, Schneiderman filed a motion asking that he be allowed to pay $119,000 toward taxes from his $215,000 bonus distribution for the last three quarters of 2010. The trial court may have been referring to the fact that Schneiderman paid the taxes before Judge Haberly ruled on the motion. However, in her order on the motion, Judge Haberly did not question the payment of the taxes and instead entered an order regarding the allocation of the *remaining* funds.

As with misrepresentation, a party's misconduct will support relief under CR 60(b)(4) only if that misconduct prevented the moving party from fully and fairly presenting his or her case. *See Dalton*, 130 Wn. App. at 668. Here, because Rogers knew about Schneiderman's alleged misconduct, it could not have affected her ability to present her case at trial. The deposit of funds into the trust account was an ongoing issue during the course of the litigation. Therefore, Rogers had an opportunity before trial and at trial to explore whether Schneiderman had deposited all the funds into the trust account that he was required to deposit.

We hold that the trial court abused its discretion to the extent that it vacated the dissolution decree based on Schneiderman's misconduct regarding depositing funds into the trust account because there is no evidence that Schneiderman's misconduct prevented Rogers from fully and fairly presenting her case.

4. Discovery Violations

The trial court found that Schneiderman "willfully violated the discovery rules by failing to supply complete and accurate information regarding his business income," CP at 874, which constituted misconduct under CR 60(b)(4) and was grounds for a new trial as a discovery

21

sanction under CR 37(b)(2). Specifically, the trial court found that many of Schneiderman's responses to interrogatories and requests for production regarding his income and businesses stated, "provided to Kessler" when in fact Kessler's file showed that Schneiderman did not actually provide him with the vast majority of the information labeled "provided to Kessler."[10] CP at 874-75.

A willful discovery violation can constitute "misconduct" under CR 60(b)(4). *See Roberson v. Perez*, 123 Wn. App. 320, 332-33, 96 P.3d 420 (2004).[11] One example of a discovery violation is the failure to produce documents requested by the opposing party. *Id.* at 331-33.

Here, Rogers sent Schneiderman a lengthy set of interrogatories and requests for production. Several of Schneiderman's responses simply referred to information provided to Kessler, the CPA jointly retained to value Schneiderman's business interests. Rogers filed a motion to compel discovery, arguing in part that the responses were deficient because Schneiderman failed to show specifically what documents provided to Kessler corresponded to

---

[10] The trial court also suggested that Schneiderman's failure to provide records of the trust account was a willful discovery violation. However, there is no evidence in the record that Rogers made a discovery request for records regarding Province's trust account. Rogers fails to address this finding in her brief. As a result, we hold that Schneiderman's failure to provide the trust account records cannot be the grounds for CR 60(b)(4) relief.

[11] In *Roberson*, the trial court vacated two jury verdicts and ordered a new trial as a sanction for discovery violations. 123 Wn. App. at 333. It appears that the basis for this ruling was CR 60(b)(4). *Id.* at 331, 332-33. However, the court's analysis focused on a trial court's authority to provide sanctions for discovery violations under CR 37(b)(2) rather than on a more traditional CR 60(b)(4) analysis. For instance, the court addressed the requirements for imposition of discovery sanctions set forth in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), including willful or deliberate conduct, substance prejudice, and the consideration of lesser sanctions. *Roberson*, 123 Wn. App. at 333-38.

relevant requests for production. However, the trial court denied Rogers's motion to compel, stating that Schneiderman had answered the discovery requests.

In conjunction with her CR 60(b) motion, Rogers prepared a chart analyzing the discovery requests for which Schneiderman referred to materials provided to Kessler. This analysis showed that Schneiderman had not actually provided to Kessler all the documents that Rogers had requested. Schneiderman presents no evidence that he actually did produce all the documents Rogers requested in discovery either directly to Rogers or to Kessler. Therefore, we hold that the evidence is sufficient to show that it is highly probable that Schneiderman committed discovery violations when he responded to discovery requests for documents by stating that he was providing those documents to Kessler, when in fact he did not provide some of those documents to Kessler.

However, once again Rogers failed to show that Schneiderman's discovery violations prevented her from fully and fairly presenting her case. First, Rogers knew that Schneiderman's discovery responses were deficient from her perspective because they did not identify what documents had been provided to Kessler. That was one of the primary grounds for her motion to compel. Nothing prevented her from doing what she did three years later – finding out from Kessler what documents Schneiderman had provided to him and comparing those documents with Rogers's discovery requests.

In *Roberson*, Division Three of this court stated that "[d]iligence is not a consideration in determining whether a new trial is an appropriate remedy for a discovery violation." 123 Wn. App. at 334. The court suggested that the use of discovery procedures constitutes the exercise of appropriate diligence, and a party is justified in believing that the opposing party had fully and completely responded to those requests. *Id.*

However, the court in *Roberson* did not consider the requirement under CR 60(b)(4) that there be sufficient evidence to show that it was highly probable that the misconduct prevented the moving party from fully and fairly presenting his or her case. *Dalton*, 130 Wn. App. at 668. Here, Rogers was aware of a potential discrepancy between the documents requested and the documents provided to Kessler. She had an opportunity to resolve that discrepancy by investigating further, possibly propounding more discovery, and possibly bringing another motion to compel discovery. The fact that she failed to take any of those steps eliminates the necessary connection between Schneiderman's discovery violations and the referee's ruling.

Second, even if we disregard Rogers's failure to investigate further regarding Schneiderman's discovery responses, neither Rogers nor the trial court addressed whether any of the documents Schneiderman failed to provide to Kessler were relevant to the dissolution trial. A moving party under CR 60(b)(4) must show some connection between the alleged misconduct and entry of the judgment. *See Hickey*, 55 Wn. App. at 372.

Here, at the time of trial Rogers had Schneiderman's personal income tax returns showing his income for 2008, 2009, and 2010. Based on these tax returns, Rogers had the ability to argue – and did argue – that Schneiderman's future income likely would be similar to his income in 2008 and 2009 and dissimilar to his income in 2010. There is no indication that any of the other requested documents would have enabled Rogers to make a better argument.

Information regarding Schneiderman's 2011 income is different. Apparently, Schneiderman provided no 2011 financial information regarding his ophthalmology practice or any information regarding his 2011 personal income. However, Rogers' interrogatories and requests for production did not request this information. Rogers' discovery requests were propounded in May 2010. All of the discovery requests regarding his ophthalmology practice's

24

financial information referred to the previous five years. Similarly, Rogers requested that Schneiderman provide his share of the net profits of his businesses, but only over the previous five years. And Rogers' discovery requested documentation regarding Schneiderman's earned income during the past six months and requested his personal income tax returns only through 2010. There were no specific discovery requests for 2011 income information.

We hold that there is insufficient evidence to show a high probability that Schneiderman's discovery violations prevented Rogers from fully and fairly presenting her case or had any effect on the judgment. Accordingly, we hold that the trial court abused its discretion in vacating the dissolution decree on this basis.

B.     VACATION UNDER CR 60(b)(3)

The trial court found that newly discovered evidence was grounds to vacate the dissolution decree under CR 60(b)(3). However, Schneiderman argues that the trial court should not have considered the allegations in Rogers' amended motion to vacate because the allegations were filed nearly two years after entry of the dissolution decree, and by rule CR 60(b)(3) motions must be filed within one year after judgment. We agree.

1.     Failure to Make Argument at Trial Court

Rogers initially argues that Schneiderman failed to make his one-year deadline argument at the trial court. But in response to Rogers' amended motion to vacate, Schneiderman filed a declaration that asserted that the trial court could only consider Rogers' original motion and declaration filed in October 2012 – and could not consider any other documents – because CR 60 "expressly limits the filing date for a motion for an order to show cause to within [one] year of entry of the order, along with a supporting affidavit." CP at 283. Schneiderman asserted that "[a]nything filed after the one year mark should be disregarded." CP at 283. The trial court

25

subsequently addressed CR 60(b)(3)'s one-year deadline at oral argument of the show cause motion.[12]

The record shows that Schneiderman did argue that the one-year deadline for filing motions under CR 60(b)(3) applied to the amended motion and supporting materials. Therefore, we hold that Schneiderman can raise that issue on appeal.

2.   One-Year Deadline for CR 60(b)(3) Motions

CR 60(b) states that motions to vacate judgments under CR 60(b)(1), (2) and (3) must be filed not more than one year after the judgment. CR 6(b) prohibits enlargement of time under CR 60(b). Therefore, this time limit must be strictly followed.

Here, Rogers' original motion was filed before the one-year deadline, but that motion did not seek relief under CR 60(b)(3) based on newly discovered evidence. Rogers did not move for relief under CR 60(b)(3) until she filed her amended motion to vacate in August 2013 – 22 months after the judgment was entered. And Rogers cites no authority for the proposition that her CR 60(b)(3) motion can "relate back" to her earlier CR 60(b)(4) motion and thereby avoid the one-year time limit. Therefore, we hold that Rogers' CR 60(b)(3) motion was untimely.

The trial court expressly concluded that the dissolution decree should be vacated under CR 60(b)(3) based on newly discovered evidence: the WSBA report regarding Province's misconduct, the Forde spreadsheet regarding Schneiderman's 2011 income, and the Medicare reimbursement summary sheet for 2009-2012. Because Rogers' CR 60(b)(3) motion was untimely, we hold that the trial court erred in vacating the dissolution decree based on newly discovered evidence.

---

[12] At the hearing on the merits of Rogers' motion to vacate the dissolution decree in December, neither party addressed the one-year deadline under CR 60(b)(3), nor did the trial court.

C.    ATTORNEY FEES

1.    Fees in Trial Court

Schneiderman argues that the trial court erred by awarding Rogers attorney fees incurred regarding her CR 60(b) motion. His only claim is that because the trial court erred in vacating the dissolution decree, it also erred in awarding attorney fees.

However, the trial court did not award attorney fees to Rogers as the prevailing party under CR 60(b). Instead, the trial court awarded attorney fees under the authority of RCW 26.09.140, which allows courts to award attorney fees in dissolution cases regardless of which party prevails. Further, the trial court based its attorney fee award on an express finding that Schneiderman engaged in intransigent conduct. A trial court has authority to award attorney fees based on a party's intransigence. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006).

Schneiderman does not challenge the trial court's authority to award attorney fees and does not assign error to or present any argument regarding the trial court's finding of intransigence. Therefore, without addressing the merits of the trial court's attorney fee rulings, we reject Schneiderman's claim of error regarding the trial court's award of attorney fees. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we need not consider arguments not supported by meaningful analysis or citation to pertinent authority).

We affirm the trial court's award of attorney fees to Rogers.

2.    Fees on Appeal

Rogers also requests an award of attorney fees on appeal based on "CR 60(b), RAP 18.1(a), intransigence, misconduct, and relative need and ability to pay." Br. of Resp't at 50. However, rather than arguing the basis for the recovery of fees she simply incorporates the

argument made in her trial brief. We decline to award Rogers attorney fees based on this argument. *See Gardner v. First Heritage Bank*, 175 Wn. App. 650, 676-777, 303 P.3d 1065 (2013) (refraining from granting attorney fees when a party failed to provide argument in support of its fee request).

## CONCLUSION

Vacation of a judgment under CR 60(b) is an extraordinary remedy. *See Dalton*, 130 Wn. App. at 665. The record here simply does not support this remedy. We reverse and vacate the trial court's order vacating the spousal maintenance provisions and asset/liability division of the parties' dissolution decree of dissolution under CR 60(b)(3) and (4). However, we affirm the trial court's order granting Rogers her attorney fees. We remand to the trial court for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

SUTTON, J.